**Daniel P. and Eunice A. LeCLAIR, Plaintiffs-Appellees,**

v.

**Lawrence R. HART and Thomas Larson, Defendants-Appellants.**

**No. 85–3000.**

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1986.

Decided Sept. 8, 1986.

Elaine F. Ferris, Dept. of Justice, Tax Div., Washington, D.C., for defendants-appellants.

Michael J. Collard, Minahan & Peterson, S.C., Milwaukee, Wis., for plaintiffs-appellees.

Before WOOD and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiffs, Daniel and Eunice LeClair, brought this *Bivens* suit for damages alleging that the defendants Lawrence Hart and Thomas Larson, both special agents of the Internal Revenue Service ("IRS"), violated their Fourth Amendment rights by making an unreasonable seizure of certain documents during the execution of a search warrant. The defendants moved for summary judgment on the defense of qualified immunity. The district court denied the motion, and the defendants immediately appealed the denial under the Supreme Court's recent holding in *Mitchell v. Forsyth,* — U.S. —, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (denial of qualified immunity from suit is an immediately appealable final order). Under *Mitchell,* the only issue we may review at this time is "whether the legal norms allegedly violated by the defendant[s] were clearly established at the time of the challenged actions." 105 S.Ct. at 2816. We affirm.

## I.

In *Mitchell,* the Supreme Court noted that "the appealable issue is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." 105 S.Ct. at 2816 n. 9. Therefore, although the defendants dispute some of the LeClairs' factual allegations, for our purposes we need only summarize the LeClairs' version of the facts. *See Mitchell, id.* at 2816 ("[a]n appellate court reviewing the denial of the defendant's claim of im-

munity need not consider the correctness of the plaintiff's version of the facts").

In the fall of 1982, the LeClairs were among the subjects of two unrelated federal investigations. The Susie Q Fish Company, which the LeClairs owned, was one of the targets of a United States Fish and Wildlife Service ("F & WS") investigation into purported violations of fish and game laws. On November 8, 1982, F & WS special agent Richard Elliott obtained a warrant to search the LeClairs' residence for "documents evidencing the purchase, sale, and catch of fish in 1981 and 1982."

In January of 1982, the Criminal Investigation Division of the IRS had started an investigation of the LeClairs for the tax years 1977 through 1980. Agent Lawrence Hart handled the investigation, which included an administrative summons requiring the Susie Q Fish Company to produce all of its corporate records from 1977 through 1981. Following an unsuccessful challenge by the LeClairs, the requested records were made available to Hart.

Hart learned of the impending F & WS search of the LeClairs' home and on November 9, 1982, Hart asked Elliott if Hart and another IRS agent, Thomas Larson, could accompany the F & WS team that searched the LeClairs' home. Elliott consented to the IRS agents joining the search team as observers, with the understanding that they would not be permitted to take an active part in the search and would in fact have no authorization to do any searching. Prior to this contact with Hart and Larson on the eve of the search, Elliott had no idea that the IRS desired to participate in the search.

On November 10, 1982, F & WS special agent Edward Nichols and agents Gus Ernst and Tom Edwards of the Wisconsin Department of Natural Resources were assigned to search the LeClairs' residence. At about 6:00 a.m. the three agents arrived at the LeClairs' home, accompanied by Hart and Larson in a separate car. Nichols, Ernst, and Edwards knocked on the door and were admitted by Mrs. LeClair. About five minutes later, Ernst brought Hart and Larson into the residence. Hart and Larson were not wearing badges and did not identify themselves to the LeClairs as IRS agents.

Hart, Larson, and Ernst spent most of the three-hour search with Mrs. LeClair in a basement room the LeClairs used as an office, while Nichols and Edwards remained upstairs with Mr. LeClair. Hart, Larson, and Ernst all took an active part in a thorough search of records, documents, and other items in the basement office. Mrs. LeClair received the impression that Hart was in charge of the search and that Ernst was assisting Hart. Hart searched a greater area than any of the other agents.

During his search, Hart dictated verbatim into a tape recorder certain documents that he reviewed and considered important. Larson took copious handwritten notes. The tapes and notes were used by Hart to prepare a report to his IRS superiors, which listed items Hart felt were of interest to the IRS. The report and Larson's notes describe numerous financial records pertaining to the period 1977–1980. Hart dictated items not covered by the search warrant.

The LeClairs were indicted for income tax evasion and filed a motion to suppress the evidence seized at the November 10, 1982 search, claiming that IRS agents Hart and Larson had illegally seized evidence in the LeClairs' basement office by making handwritten and tape-recorded copies of documents not included in the warrant. The presiding magistrate agreed that Hart and Larson had illegally seized the documents that were not within the scope of the warrant, but the motion to suppress was denied because the magistrate concluded that the IRS had not used any of the information obtained on November 10, 1982, to support the indictment against the LeClairs. Following the magistrate's decision, the LeClairs each pled guilty to criminal tax evasion.

On January 9, 1985, the LeClairs brought this suit for damages against Hart and

Larson[1] pursuant to the Supreme Court's doctrine enunciated in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (creating a federal cause of action for damages based upon proof of injuries resulting from federal agents' violation of claimant's constitutional rights). The district court granted the defendants' motion for a protective order prohibiting the LeClairs from engaging in any discovery until the court resolved the question of whether the defendants had qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The defendants then moved for summary judgment on the grounds of qualified immunity from suit. The district court denied the motion with respect to Hart and Larson, concluding that they seized documents outside the scope of the F & WS warrant and the seizure violated clearly established law.[2] Hart and Larson appeal from the district court's denial of their summary judgment motion.

### II.

Prior to the Supreme Court's decision in *Mitchell v. Forsyth,* the circuits were split on the issue of the appealability before final judgment of orders denying qualified immunity. *See Mitchell,* 105 S.Ct. at 2812 & n. 5. This circuit had taken the position that we lacked jurisdiction over interlocutory appeals of qualified immunity rulings. *See Powers v. Lightner,* 752 F.2d 1251 (7th Cir.1985). In *Mitchell,* the Supreme Court concluded that:

[A] district court's denial of a claim of qualified immunity, to the extent that it

turns on an issue of law, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.

105 S.Ct. at 2817.

We have jurisdiction solely to review the narrow question of law presented by this appeal: did the alleged conduct of IRS agents Hart and Larson on November 10, 1982, amount to an unreasonable seizure. We further note that defendants Hart and Larson are covered by qualified immunity unless their alleged actions on November 10, 1982, violated clearly established law at the time that Hart and Larson acted. See *Mitchell,* 105 S.Ct. at 2818 (citing *Harlow v. Fitzgerald,* 457 U.S. at 818–19, 102 S.Ct. at 2738). We therefore must decide whether, on November 10, 1982, it was clearly established law that a verbatim copying (both tape-recorded and handwritten) of financial documents that were outside the scope of the F & WS warrant violated the LeClairs' Fourth Amendment right to be free from unreasonable seizures.

The principal argument put forth by Hart and Larson is that a "seizure" takes place only when "the owner is forcibly deprived of possession of the item in question," and thus they did not seize the LeClairs' documents because they did not physically remove them from the basement office. This position is clearly untenable in light of the Supreme Court's decision in *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). In *Berger,* the Court made it clear that recorded conversations were seizures within the purview of the Fourth Amendment.[3] 388 U.S.

---

1. The LeClairs also sued IRS Acting Group Manager Douglas Gastorf, who allegedly authorized the search. The district court granted the summary judgment motion of Gastorf on the theory that Gastorf's involvement in the search was too inconsequential. The LeClairs did not appeal from this decision of the district court.

2. The LeClairs also contend that the defendants conducted an illegal search. The district court found it unnecessary to consider this issue, and so do we.

3. The defendants' only response to the clear import of *Berger* is the curious argument that

three members of the Court dissented from the majority's conclusion that recording a conversation was a seizure. The obvious response is that six members of the Court took the position that the recordings were seizures. Even more curious is the defendants' assertion that our circuit, in *United States v. Williams,* 737 F.2d 594, 605 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985), chose to adopt the position of the Supreme Court dissenters instead of the majority. As a circuit court of appeals we are bound by the Supreme Court's interpretation of the Constitution, and furthermore, the opinion of the court in *Williams* is not

at 59–60, 87 S.Ct. at 1883–84. Hart and Larson fail to offer any grounds on which their alleged seizure of the LeClairs' financial documents can be differentiated from the government's seizure of conversations in *Berger.*

Following *Berger,* it has been clear that the Fourth Amendment embraces more than just the forced physical removal of tangible objects, as the defendants would have us decide. Indeed, *Berger* stands for the proposition that the government may seize intangible items such as the information contained in the financial documents which the IRS agents copied. Although the Supreme Court has never passed upon the precise type of recording which is involved in this case, the lower courts have encountered no difficulty in finding seizures in cases involving analogous circumstances. *See, e.g., United States v. Marbury,* 732 F.2d 390, 399–400 (5th Cir.1984) (copying down identification numbers from items of equipment a seizure); *Sovereign News Co. v. United States,* 690 F.2d 569, 573–74 (6th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (notetaking of titles of films and magazines a seizure); *United States v. Gray,* 484 F.2d 352, 356 (6th Cir.1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974) (copying down serial numbers on rifles a seizure); *United States v. Sokolow,* 450 F.2d 324, 326 (5th Cir.1971) (noting serial numbers of air conditioners found in garage a seizure); *United States v. Wolfe,* 375 F. Supp. 949, 955–57 (E.D.Pa.1974) (copying a federal probation report uncovered while searching for records relating to trafficking in stolen goods a seizure).

The defendants fail to cite a single case which uses their narrow definition of seizure in a context analogous to this case. We reject the defendants' argument that the Supreme Court has adopted their definition of "seizure." The cases cited by the defendants fail to support their argument, or even create any uncertainty in the law following *Berger.*[4]

The defendants cite *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), where the Court said in dicta that "a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in the property." *Id.* at 113, 104 S.Ct. at 1656. Cases such as *Jacobsen* which were decided after the defendants acted are of limited value to them. Qualified immunity focuses upon the objective reasonableness of the defendants' actions at the time they acted, so it would be illogical to allow them to argue that subsequent cases justify their behavior merely because the later cases make the law less certain. Defendants can rely on subsequent cases only to the extent that the later cases decide that the law, although apparently well-established at the time the defendants acted, was incorrect. This would be the case, for example, where the lower courts had agreed upon a certain resolution of an issue prior to when the defendants acted in contravention of the apparently well-established law, but subsequently the Supreme Court determined that the lower courts were incorrect and that the defendants' actions did not violate the law. That is not the case here.

We do not find anything in *Jacobsen* to support the defendants' position. The Supreme Court in *Jacobsen* did not overrule *Berger* and had no occasion to consider the definition of a seizure in a context analogous to Hart and Larson's actions. The Court was discussing a package containing drugs, a tangible physical item, and thus the Court had no occasion to discuss the definition of seizures in the context of intangible property. Even if the Court can be said to have somehow linked seizures to

susceptible to the interpretation advanced by the defendants. In *Williams,* the court did not address *Berger* and the case involved only the use of already seized conversations, not the original seizures. 737 F.2d at 605.

4. In particular, we reject the defendants' argument that a "seizure" for purposes of the Fourth Amendment is the same as a "taking" for purposes of the Fifth Amendment. The defendants cite no authority for this argument, and we are aware of none.

property interests, it is well established that "[t]he right to exclude others is generally 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011, 104 S.Ct. 2862, 2878, 81 L.Ed.2d 815 (1984) (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332 (1979)). We do not believe that *Jacobsen* can even be said to make the Supreme Court holding in *Berger* less than certain.

In the face of the clear line of precedent following *Berger* and, more significantly, the *Berger* opinion itself, Hart and Larson cannot seriously argue that their alleged conduct in copying the financial documents found in the LeClairs' basement office was not a seizure. Nor can they argue that the LeClairs' Fourth Amendment rights were not clearly established on November 10, 1982. The *Berger* opinion preceded the defendants' actions by fifteen years, and several lower court opinions had clearly held that analogous conduct amounted to a seizure. The more recent cases, although decided subsequent to the 1982 incident and thus irrelevant for determining the state of clearly established law in 1982, are nonetheless telling in that they treat the issue of whether the type of conduct challenged here amounted to a seizure as a closed one not worthy of discussion. *See Mitchell*, 105 S.Ct. at 2820 (qualified immunity attaches where question was open at the time that defendant acted).

This is not a case like *Mitchell* where a legitimate question existed as to the legality of the defendants' conduct at the time they acted. *See* 105 S.Ct. at 2820 n. 12. The Court in *Mitchell* expressly rejected the idea that an official is immune from liability merely because the Fourth Amendment has never explicitly been held to apply to the identical conduct and circum-

stances. *Id. See also People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 148 (3d Cir.1984) (no qualified immunity if the defendant violates "a clearly established and well litigated general proposition in which the case at hand merely presents a new factual wrinkle"). The LeClairs have carried their burden of demonstrating that the law was clear at the time of the alleged violation. *See Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3019–20, 82 L.Ed.2d 139 (1984).

The district court was correct in deciding that the alleged conduct of Hart and Larson amounted to a seizure under clearly established law at the time when they copied the LeClairs' financial documents.[5] The Fourth Amendment only prohibits unreasonable seizures, but the defendants apparently do not contest that the plaintiffs have sufficiently alleged that certain of the seized documents were outside the scope of the warrant and thus unreasonable. *See Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). We therefore conclude, as did the district court, that Hart and Larson are not entitled to a summary judgment on the basis of qualified immunity at this stage of the proceedings.

Although we decline to grant the defendants' summary judgment motion, we reiterate that our holding is a narrow one. Although the defendants have attempted throughout their briefs to base their arguments on their own version of the facts, our holding is necessarily limited to a decision of law based solely upon the plaintiffs' factual allegations. We have neither considered nor attempted to resolve any of the factual disputes. Nor do we express any opinion as to what effect any variation between the facts alleged and those established at trial will have on the defendants' qualified immunity defense. We also have found it unnecessary to consider the Le-

---

5. We do not make any distinction between the various forms of copying, such as copying by hand, reading the document verbatim into a tape recorder, and copying on a machine. Neither party has cited any cases which attached any significance to the method of copying used by the defendant, and since what the defendant is actually seizing is the information and not the paper and ink itself, we place no significance on the method of copying chosen by the defendants.

Clairs' additional claim that Hart and Larson conducted an illegal search on November 10, 1982. We hold merely that Hart and Larson are not entitled to qualified immunity at this point in the proceedings. Having settled that issue, discovery may begin and both parties may proceed to trial to establish whether the LeClairs are entitled to recover damages from Hart and Larson. The decision of the district court is AFFIRMED.