165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
TOWN OF OGDEN DUNES, James T. Bailey, and Kristin W. Bailey,
et al ., Plaintiffs-Appellants,
v.
INDIANA PORT COMMISSION, and Little Calumet River Basin
Development Commission, Defendants-Appellees.
 No. 98-2275.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 6, 1998.
Decided Dec. 28, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. No. 97 C 191. Allen Sharp, Judge.
 Before Hon. KENNETH F. RIPPLE, Hon. MICHAEL S. KANNE, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 The Town of Ogden Dunes rests along the shore of Lake Michigan in Northern Indiana. The claims of the Town of Ogden Dunes and more than seventy individual land owners (collectively "Ogden Dunes") arose out of activities that began in the 1960s. Around that date, the Indiana Port Commission ("Port Commission"), the United States (through the United States Army Corp of Engineers), and Bethlehem Steel Corporation and National Steel Corporation ("the Steel Companies") constructed the Burns International Harbor along the shore of Lake Michigan Ogden Dunes alleges the structure disrupted and continues to disrupt the normal littoral processes. Simply understood, the disruption changes the way in which the sand accumulates along the shoreline. According to Ogden Dunes, this disruption caused and continues to cause severe erosion to the western shoreline that amounts to a taking of property.
 
 
 2
 In the early 1980s, the United States built the Burns Waterway Small Boat Harbor ("the Small Boat Harbor") also on Lake Michigan for small boats in accordance with 33 U.S.C. § 577. As part of the development, two jetties and a breakwater extending into Lake Michigan were constructed. Ogden Dunes alleges that Little Calumet helped develop the structures that constitute the Small Boat Harbor and continues to operate it in cooperation with the federal government. Ogden Dunes claims that Little Calumet has owned structures in the Small Boat Harbor since its construction and that it has not denied such ownership. These structures, Ogden Dunes says, worsened the problem created by the 1960s developments. In addition, Ogden Dunes charges the new structures have damaged and destroyed public infrastructure and homes, causing a loss of use, loss of rental income, and a decrease in property value.
 
 
 3
 Ogden Dunes filed suit against the Port Commission, the United States of America, the Steel Companies, and Little Calumet River Basin Development Commission ("Little Calumet"). Ogden Dunes asserted takings claims[1] against the Port Commission, Little Calumet, and the United States and negligence and nuisance claims against all the defendants, seeking both monetary and injunctive relief.
 
 
 4
 In response to Ogden Dunes's claims, Little Calumet and the Steel Companies filed separate motions to dismiss. The District Court granted each motion. In granting Little Calumet's Rule 12(b)(6) motion for failure to state a claim upon which relief could be granted, the District Court found that Little Calumet did not own the harbor structures at the heart of the Ogden Dunes's complaint. Ogden Dunes appeals only the District Court's decision granting Little Calumet's Rule 12(b)(6) motion.
 
 
 5
 We review a district court's decision granting a Rule 12(b)(6) motion to dismiss for failure to state a claim de novo. See Strasburger v. Board of Educ., Hardin County Community Unit Sch. Dist. No. 1, 143 F.3d 351, 359 (7th Cir.1998). We must accept "the well-pleaded allegations in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff." Mallett v. Wisconsin Div. of Vocational Rehabilitation, 130 F.3d 1245, 1248 (7th Cir.1997). The motion should be granted only if the plaintiff cannot prove any set of facts that would entitle her to relief. See Porter v. DiBlasio, 93 F.3d 301, 305 (7th Cir.1996).
 
 
 6
 The District Court granted Little Calumet's motion to dismiss based on its interpretation of the federal statutory provisions governing river and harbor improvements. The court interpreted 33 U.S.C. § 577(c) to preclude the possibility that Little Calumet owned the structures causing the disturbances that underlie Ogden Dunes's claim. We believe the District Court's reading of the statute is too restrictive.
 
 
 7
 In concluding that Ogden Dunes did not state a claim upon which relief could be granted, the District Court relied solely upon its interpretation of the federal statute governing small river and harbor improvement projects. The statute provides: "Local interests shall provide without cost to the United States all necessary lands, easements and rights-of-way for all projects to be constructed under the authority of this section." 33 U.S.C. § 577(c). The District Court found that Congress's use of "shall" indicates that the statute "clearly required Little Calumet to transfer all interest in the necessary land to the United States, and [the statute] does not provide for the return of such interest after construction is completed." It also concluded that the phrase "lands, easements and rights-of-ways" means that Little Calumet could not have ceded only the necessary land, only an easement, or only rights-of-way to the United States based on Congress's use of the conjunction "and." Because it found the statute required Little Calumet to transfer all of its interest in the property on which the Small Boat Harbor was built, it concluded that Little Calumet could not possess any ownership interest in the structure.
 
 
 8
 This conclusion doomed Ogden Dunes's takings, nuisance, and negligence claims. Without establishing Little Calumet maintains an ownership interest in the Small Boat Harbor that allegedly is causing the shoreline erosion, Ogden Dunes could not establish that Little Calumet is liable for the damages. Ownership is an important element in stating takings claims. See Luedtke v. County of Milwaukee, 521 F.2d 387, 470-71 (7th Cir.1975) (holding that plaintiffs must look to the owner and operator of an airport, not the airlines, for compensation from takings) overruled on other grounds, Bieneman v. City of Chicago, 864 F.2d 463 (7th Cir.1988). It is also important under Indiana law for establishing nuisance claims. See City of Bloomington v. Westinghouse Elec. Corp., 891 F.2d 611, 614 (7th Cir.1989); see also Stover v. Fechtman, 222 N.E.2d 281, 284 (Ind.Ct.App.1966) (finding that essential to a nuisance claim "is the fact that one party is using his property to the detriment of the use and enjoyment of the property of another ... or [so as to] have interfered with the exercise of a public right"). To allege sufficiently its negligence claims, Ogden Dunes needs to show, among other things, that Little Calumet owes the plaintiffs a duty. Ogden Dunes attempts to meet this element, in part, by establishing that Little Calumet owns the Small Boat Harbor. See Schloot v. Guinevere Real Estate Corp., 697 N.E.2d 1273, 1275-76 (Ind.Ct.App.1998) (finding that in order to state a valid negligence claim, plaintiff must demonstrate that defendant owed her a duty, which may be evidenced in part by establishing ownership). Once it concluded that Little Calumet did not own the Small Boat Harbor, the District Court found that Ogden Dunes failed to state valid claims against Little Calumet and granted the motion to dismiss.
 
 
 9
 Property is ubiquitously characterized as bundle of sticks or rights. See, e.g., Dolan v. City of Tigard, 512 U.S. 374, 384 (1994); Kaiser Aetna v. United States, 444 U.S. 164, 176 (1979); United States v. Ben-Hur, 20 F.3d 313, 317-18 (7th Cir.1994). For example, the right to exclude others constitutes only one of these sticks. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1011 (1984); see also LeClair v. Hart, 800 F.2d 692, 696 (7th Cir.1986). Other sticks include the right to possess, the right to use, and the right to dispose of property. See United States v. General Motors Corp., 323 U.S. 373, 378 (1945). Thus, property includes more than simply a single right. These rights may be allocated differently. See Polenz v. Parrott, 883 F.2d 551, 557 (7th Cir.1989) (finding that an occupancy permit constitutes a property interest, even if denial of it does not affect plaintiff's ownership interest in the property completely). When examining property interests, therefore, courts must determine the specific rights of the parties at issue and may not summarily conclude that all rights are involved or are automatically transferred.
 
 
 10
 The District Court preempted this analysis by concluding that the federal statute required Little Calumet to transfer all of its property rights associated with the Small Boat Harbor to the United States. While it is true that the statute specifically requires local interests to provide lands, easements, and rights-of-way; it does not expressly discuss a transfer of all property rights, such as fee simple, title or deed, or other rights commonly associated with property ownership. Examining the subsection in light of the canons of statutory interpretation and reading § 577(c) in context with the other subsections of the provision convinces us that the District Court's interpretation of property with regard to this statute is too restrictive. We believe the statute, while permitting a complete transfer of property interest, does not require it. Rather, it merely requires the local interest to supply the land, as well as those easements and rights-of-way necessary for the construction of the project. It does not require the local interest to cede all of its ownership interests.
 
 
 11
 Because the characterization of property as a bundle of rights is a well-established concept, the maxim expressio unius est exclusio alterius provides guidance in reaching this conclusion. The canon of expressio unius states that inclusion of specific items or words suggests, by implication, the exclusion of those not enumerated. See McCammon v. Indiana Dept. of Fin. Inst., 973 F.2d 1348, 1350 (7th Cir.1992). We maintain our belief in the canon's limited utility and our recognition that "not every silence is pregnant." State of Illinois, Dept. of Pub. Aid v. Schweiker, 707 F.2d 273, 277 (7th Cir.1983); see also In the Matter of American Reserve Corp., 840 F.2d 487, 492 (7th Cir.1988). This Court, however, has not completely abolished its use. See Mallett, 130 F.3d at 1250; National Solid Wastes Management Ass'n. v. Killian, 918 F.2d 671, 685-86 (7th Cir.1990) (Easterbrook, J. dubitante), aff'd sub nom. Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88 (1992). For example, we, along with other circuits and the Supreme Court, continue to invoke this canon when considering whether a statute contains an implied private right of action as a remedy. See, e.g, TransAmerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); Mallett, 130 F.3d at 1250; Moreno v. Consol. Rail Corp., 99 F.3d 782, 792 (6th Cir.1996).
 
 
 12
 The statutory provisions dealing with the transfer of property interests are similar enough to those dealing with remedies, so that application of this canon is appropriate. We have concluded that statutes in which Congress includes provisions providing for a private right of action for states and an administrative appeals process for private persons constitutes sufficient evidence that Congress did not intend to provide an implied private right of action. See Mallett, 130 F.3d at 1250. It is not a matter of fanciful speculation to conclude that Congress, in dealing with remedies provisions, recognizes the various possibilities and, by including specific ones, rejects those it excludes. Thus, when Congress expressly provides specific remedies and does so without including a private right of action, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action," ' TAMA, 444 U.S. at 20 (quoting Cannon v. University of Chicago, 441 U.S. 677, 742 (1979) (Powell, J. dissenting), making the application of expressio unius appropriate. Similarly, Congress is fully aware of the variety of rights associated property. When a statute specifically requires an owner to relinquish some property rights, but not all his rights, it is not far-fetched to believe Congress considered and rejected the idea of the owner relinquishing the rights not expressly described in the statute. Thus, the application of the maxim expressio unius is as appropriate in interpreting statutory provisions governing property interests as it is in interpreting the remedy provisions of other statutes.
 
 
 13
 In applying this maxim, we conclude that the statute does not require a local interest to transfer all of its property interests and, thus, complete ownership associated with a given project to the United States. The statute requires only that local interests, such as Little Calumet, provide lands, easements, and right-of-ways to the United States. The statute does not define the term "provide" to mean that a local interest must transfer all of its property interests fee simple to the United States. It does not discuss the transfer of ownership or any property interests other than those of easements or rights-of-way. For example, under this provision it is possible that Little Calumet could have leased the land to the United States without charge and have retained ownership. Of course, it is equally possible under the statute that Little Calumet relinquished its fee simple interest in the land to the United States. We do not believe the provision simply requires Little Calumet to transfer fee simple interest to the United States as the District Court concluded. To read the statute to require the transfer of more than the specified rights included requires the Court to legislate-a function beyond the realm of our constitutional authority.
 
 
 14
 In addition, interpreting the statute to require a transfer of all property interests to the United States could create a constitutional problem. As the Supreme Court has noted, we must avoid interpretations of a statute that render it unconstitutional. See Rust v. Sullivan, 500 U.S. 173, 190 (1991). If the statute requires local interests to turn over their entire ownership interests in the property without compensation from the United States, the provision would raise serious concerns about its validity under the Takings Clause of the Fifth Amendment. The Fifth Amendment prohibits the federal government from taking property without providing "just compensation." See Davon, Inc. v. Shalala., 75 F.3d 1114, 1127 (7th Cir.1996). Requiring a local interest to cede all of its property rights in lands or structures associated with a harbor improvement could be considered a taking. Section 577(c) specifically states the provision of lands, easements and rights-of-way is to be "without cost." This interpretation, then, raises the possibility of a taking by the federal government without just compensation. We, therefore, should avoid applying a restrictive interpretation of this provision because it could render the statute unconstitutional.
 
 
 15
 Looking at the § 577 in its entirety bolsters this assessment. The section read as a whole provides for the joint ownership of harbor improvements by local interests and the United States. This section authorizes the Secretary of the Army to allot monies to construct small river and harbor improvements that Congress has not specifically authorized. 33 U.S.C. § 577(a). While the United States bears the general costs of operation and maintenance of the projects, the Chief of Engineers, if he or she deems it necessary, may require non-federal interests to share these expenses. 33 U.S.C. §§ 577(d) & 577b. These sections read with § 577(c) imply that while the United States may own the improvements, it could also share ownership of them with the local interest. Ogden Dunes alleges this type of arrangement exists between Little Calumet and the United States. The complaint avers that Little Calumet maintains and operates the Small Boat Harbor in cooperation with the United States. Because of this joint-ownership, which is possible under the statute and allegedly is occurring between Little Calumet and the United States, the statute does not foreclose the possibility of ownership by Little Calumet.
 
 
 16
 Thus, based on the canons of statutory construction and our examination of the statutory provision as a whole, we conclude that the statute contemplates the possibility of local interests maintaining property interests in harbor improvements.
 
 
 17
 Ogden Dunes's takings, nuisance, and negligence claims cannot be evaluated without factual determinations. Thus, we REVERSE the District Court's grant of Little Calumet's motion to dismiss and REMAND the case for consideration of the takings, nuisance, and negligence claims alleged by Ogden Dunes.
 
 
 
 [1]
 Ogden Dunes alleges federal takings claims against the Port Commission, Little Calumet, and the United States. It alleges state takings claims against only the Port Commission and Little Calumet