In the

# United States Court of Appeals
### For the Seventh Circuit

———————

Nos. 06-3017 & 06-3095

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

YOU BIN YANG and
YOU LIN YANG,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-186-S—**John C. Shabaz**, *Judge.*

———————

ARGUED FEBRUARY 7, 2007—DECIDED MARCH 7, 2007

———————

Before FLAUM, ROVNER, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* On October 30, 2002, You Bin Yang called the Eau Claire Police Department ("ECPD") to report a burglary at his home. After processing the scene, Officer Brian Schneider asked Yang if he could take five notebooks for fingerprinting. Yang acceded to the request. At the time, the IRS was investigating Yang and his brother, You Lin Yang, for tax fraud. One of the officers who knew about the IRS investigation flipped through the notebooks' pages and saw what appeared to be accounting information, which ultimately led to an indictment against Yang and his brother. They filed a motion to suppress the notebooks, which the district court

denied. Yang and his brother subsequently entered conditional guilty pleas, reserving their right to appeal the denial of the motion to suppress. They now appeal. For the following reasons, we affirm the district court's ruling.

## I. Background

On October 30, 2002, You Bin Yang called the ECPD to report a burglary at his home. Officer Dave Kleinhaus responded to Yang's call. When he arrived at Yang's residence, Yang told him that the burglars had taken a DVD player from his bedroom and $2,500 from his parents' bedroom. Officer Kleinhaus surveyed the ransacked home, noting that the burglars had displaced the dresser drawers in both Yang's and his parents' bedroom. After viewing the residence, Kleinhaus requested an evidence technician.

Officer Brian Schneider arrived to process the scene. In the course of his work, he found five notebooks in and around the dresser in Yang's parents' room. Three of the notebooks were spiral bound and two were bound bookstyle. The three spiral notebooks were each labeled with a year: 2000, 2001, and 2002. None of the notebooks were sealed. Officer Schneider told Yang that he wanted to take the notebooks to the police department to process them for fingerprints, and Yang gave him permission to do so. At the time of the burglary, Yang, his brother, and his father were under investigation for tax fraud in connection with their ownership of the China Buffet Restaurant in Eau Claire.

On November 1, 2002, Yang called the police department and asked Sergeant Eric Larsen when he could retrieve his notebooks. Larsen, who knew about the IRS investigation, told Yang that he could probably have them back by November 4. Yang asked Larsen if the fingerprint-

ing could be done earlier because Yang needed one notebook in particular. Larsen told Yang that he would talk to the evidence technician and ask if the tests could be run sooner.

Sergeant Larsen checked the notebooks out of evidence and reviewed their contents. Larsen saw that the notebooks appeared to contain the restaurant's financial records written in Chinese. Larsen began copying the 2002 notebook. While he was making the copies, the evidence technician arrived and told Larsen that most of the fingerprinting tests would be performed on the notebook covers but that if the fingerprinting powder touched the inside pages, it could make the writing difficult to read.

Larsen stopped copying the 2002 notebook and called Yang. Larsen told Yang that the fingerprint powder might damage the writing in the notebooks, but he did not inform Yang that he had already started to copy one of them. Yang gave Larsen permission to copy the contents of each notebook, and Larsen told Yang that he could pick up any of the notebooks that he needed. Later that day, Yang picked up the 2002 notebook.

Larsen contacted IRS Criminal Investigations Special Agent Steven Makowski and told him that the police possessed what appeared to be accounting notebooks from Yang's residence. Makowski obtained a grand jury subpoena for copies of the notebooks and served it on the evidence technician on November 4, 2002. The evidence technician gave the notebooks to Makowski, who translated the writing into English and discovered that the notebooks contained evidence of tax fraud.

On December 13, 2005, a grand jury indicted Yang and his brother for conspiracy to commit tax fraud, filing false tax returns, and conspiracy to structure currency

transactions for the purpose of evading currency transaction reporting requirements.

On March 10, 2006, the brothers moved to suppress the evidence from the notebooks, arguing that the ECPD violated You Bin Yang's Fourth Amendment rights. The magistrate judge denied the defendants' motion to suppress, holding that Yang had no expectation of privacy in the notebooks once he turned them over to the police. The district court issued an order adopting the magistrate judge's report and recommendation. On May 2, the defendants entered conditional guilty pleas, reserving the right to appeal the suppression issue. On July 12, the district court sentenced the defendants to 34 months in prison.

## II. ANALYSIS

Yang and his brother contend that the district court erred by denying their motion to suppress. Specifically, Yang and his brother argue that the government violated their Fourth Amendment rights by searching through the contents of the notebooks. The government responds that Yang had no expectation of privacy in the notebooks after he gave them to Officer Schneider. This Court reviews legal determinations related to a motion to suppress de novo and findings of fact for clear error. *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects . . . shall not be violated, and no Warrants shall issue, but upon probable cause . . ." U.S. Const. amend. IV. The Constitution thus protects against warrantless intrusions, but only where an individual has a "legitimate expectation of privacy." *Rakas v. Illinois*, 439 U.S. 128, 143

(1978). Whether an expectation of privacy exists for Fourth Amendment purposes depends upon two questions: 1) whether the individual, by his conduct, has exhibited an actual expectation of privacy; and 2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967). A defendant objecting to a search bears the burden of proving that he or she had a legitimate expectation of privacy in the item searched. *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003).

The Supreme Court has noted that an individual claiming a subjective expectation of privacy must exhibit that expectation, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the defendant's allegedly invasive actions. *Kyllo v. United States*, 533 U.S. 27, 33 (2001). In other words, Yang must demonstrate that he sought to preserve the contents of the notebooks as private. *See United States v. Walker*, 426 F.3d 838, 844 (6th Cir. 2005). Moreover, a hope of privacy is not an expectation of privacy. *California v. Rooney*, 483 U.S. 307, 321 (1987) (White, J., dissenting).

Courts applying the subjective expectation prong have looked to the individuals' affirmative steps to conceal and keep private whatever item was the subject of the search. *See MacWade v. Kelly*, 460 F.3d 260, 272 (2d Cir. 2006) (noting that "a person carrying items in a closed, opaque bag has manifested his subjective expectation of privacy"); *United States v. Davis*, 332 F.3d 1163, 1168 (9th Cir. 2003) (stating that "by placing his gym bag under the bed, [the defendant] 'manifested an expectation that the contents would remain free from public examination'"); *United States v. Mackey*, 626 F.2d 684, 687 (9th Cir. 1980) (holding that the defendant had no expectation of privacy in the contents of a paper bag because it is among the

least private of containers, is easily torn, cannot be latched, and its contents can be easily discerned); *People v. Sutherland*, 415 N.E.2d 1267, 1271 (Ill. App. Ct. 1980) (holding that the defendant did not have a subjective expectation of privacy in his clothes when he took them off for treatment of a gunshot wound at a hospital because he did not specify that the clothes should not be given to anyone else).

Yang did not manifest a subjective expectation of privacy in the notebooks. Rather, he voluntarily allowed Officer Schneider to take the notebooks in their entirety to the police station and hold them for several days. He placed no limitations on access to the notebooks. He did not separate the notebook covers and keep the written contents to himself. He did not request that the officers perform the fingerprint analysis in his presence. He did not close or secure the contents of the notebook in anyway so that only the covers could be accessed. Indeed, Yang permitted Sergeant Larsen to make copies of the notebooks' pages. In short, because Yang took no affirmative steps to demonstrate any expectation of privacy in the notebooks, he cannot prevail.

Yang maintains that although the ECPD had lawful possession of his notebooks, that possession did not give Officer Larsen the right to search their contents. Yang cites *Walter v. United States*, 447 U.S. 649 (1980), in support of his argument. In *Walter*, the Supreme Court recognized the privacy right of an owner of pornographic films who shipped them by private carrier. The films were labeled, then wrapped and sealed. The packages were erroneously delivered to a recipient who opened the boxes and saw explicit drawings depicting the films' content. The recipient called the FBI, whose agents later viewed the films without obtaining a warrant. The Court held that "the fact that the FBI agents were lawfully in possession of the boxes of film did not give them author-

ity to search their contents." *Id.* at 654. The Court explained that the defendant had a reasonable expectation of privacy in the films because he "expected no one except the intended recipient either to open the 12 packages or to project the films." *Id.* at 658. *Walter* is distinguishable from our case. There, the owner manifested his expectation of privacy in the films' contents by securely wrapping, sealing, and sending them to a private party. As explained above, Yang took no such precautions.

Yang also asserts that this case is governed by *LeClair v. Hart*, 800 F.2d 692 (7th Cir. 1986). In *LeClair*, the plaintiffs were the subject of two separate federal investigations, one by the Fish and Wildlife Service ("FWS") and one by the IRS. *Id.* at 693. The IRS agent running the investigation learned that the FWS had obtained a warrant and scheduled a search of the plaintiffs' home. The IRS agents asked to accompany the FWS agents on the search as observers. The IRS agents did not wear badges or identify themselves as IRS agents. *Id.* One of the IRS agents searched the home for three hours dictating verbatim into a tape-recorder from certain financial records not covered by the FWS warrant. The plaintiffs were indicted for tax evasion as a result of the dictations, and the plaintiffs sued. This Court, reviewing the denial of qualified immunity, held that the plaintiffs had alleged a constitutional violation. *Id.* at 696. In *LeClair*, unlike in our case, there was never any question of the plaintiffs' legitimate privacy expectation in their financial documents. They were at all times within the confines of the plaintiffs' home, they were not the subject of the FWS warrant, and the plaintiffs never gave the documents to the IRS agents for perusal.

Because Yang had no subjective expectation of privacy in the notebooks, we need not reach the objectively reasonable inquiry.

### III.  CONCLUSION

For the above stated reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*