In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1576

DERRICK GARDNER,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 577—**Ronald A. Guzmán**, *Judge*.

ARGUED FEBRUARY 29, 2012—DECIDED MAY 25, 2012

Before BAUER, ROVNER, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge.* A federal jury convicted Derrick Gardner of possession of a firearm by a felon, prohibited by 18 U.S.C. § 922(g)(1), after police frisked him and discovered a pistol inside his coat pocket. Gardner insisted that the police had planted the gun on him; this led his lawyer to believe that he could not argue that the firearm was the fruit of a suspicionless search. In this collateral proceeding under 28 U.S.C. § 2255,

Gardner argues that his trial counsel rendered ineffective assistance in two respects: (1) by refusing to move to suppress the firearm as the product of an unreasonable search; and (2) by not explaining to Gardner that his testimony at a suppression hearing could not be used at trial as evidence of his guilt. See *Simmons v. United States*, 390 U.S. 377, 394 (1968). The parties agree that if the district court incorrectly determined that counsel's performance was adequate, an evidentiary hearing would be necessary to determine prejudice. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

We reject Gardner's *Simmons* argument, but we agree with his first point. Gardner's insistence that the police planted the gun on him neither justified nor compelled counsel to refrain from challenging the search that produced the weapon. We thus reverse the district court's decision and remand for the court to determine whether counsel's failure to move to suppress the weapon prejudiced Gardner.

# I

In October 2002 two police officers responded to a radio dispatch reporting an "assault in progress" by a "man with a gun" at unit 407 of a Chicago apartment building. According to the officers' testimony at trial, when they arrived they saw Gardner just outside an entrance to the building, about 50 feet from their car. Gardner approached them, and one officer asked him where he was coming from. He responded "407" and voluntarily placed his hands on the squad car for a pat-down search. The

officers quickly found a nine-millimeter pistol in his jacket pocket and arrested him.

The account that Gardner eventually gave of the encounter bore no resemblance to that of the officers. He flatly denied that he offered to be searched. Instead, he said, he was "minding his own business" outside of the apartment building when the officers approached *him* and ordered him to submit to a search. In addition, Gardner "dispute[d] that he was actually carrying a gun, or that the officer retrieved a gun from his person."

What Gardner could not deny, however, was the fact that he had several prior felony convictions at the time of the encounter when he was allegedly carrying the gun. This led to his indictment on one count of possession of a firearm by a felon. 18 U.S.C. § 922(g)(1). Gardner wanted to challenge the search that produced the gun, but his first appointed counsel refused to file a motion to suppress. Frustrated, Gardner himself filed a *pro se* motion that sought to suppress "all evidence and statements" stemming from the frisk. According to Gardner, who is African-American, the officers knew from the radio dispatch that the assailant was a black male weighing 165 pounds and with a height of 5' 7". Because Gardner weighs 225 pounds and is 6' 2", he argued in his *pro se* submission that the police lacked reasonable suspicion to detain and frisk him under *Terry v. Ohio*, 392 U.S. 1 (1968). Gardner's counsel believed that Gardner's motion could not succeed unless Gardner was prepared to admit under oath that he had possessed the seized gun. Because of this conflict,

counsel moved to withdraw. The district court granted the motion, struck Gardner's *pro se* motion, and appointed Gardner new counsel.

New counsel also refused to move to suppress the gun, but he did not try to withdraw. As a result, Gardner accused him of providing ineffective assistance and asked the court to dismiss him, but the court refused. The trial judge later stated at a pretrial conference that "you cannot file a motion to suppress an item taken from you while at the same time denying that the item was taken from you. It's just that simple . . . . And two attorneys have told you that." Later at the pretrial conference, Gardner reiterated that he was not carrying a gun when the police searched him, saying "I ain't never seen the weapon."

After a two-day trial at which the defense called no witnesses, Gardner was convicted. Before sentencing, he filed a *pro se* motion for a new trial in which he argued that the court had never properly ruled on his motion to suppress. At sentencing the prosecutor responded, without disagreement from Gardner's counsel, that if Gardner did "not have a possessory interest in the firearm, then he has no Fourth Amendment interests to vindicate." Counsel added that he had repeatedly discussed "this same issue" with Gardner, to no avail. The court denied Gardner's motion for several reasons: the motion had not been signed, filed by counsel, or served upon the prosecution; and Gardner's denial of possession divested him of "standing."

Following a successful appeal based on *United States v. Paladino*, 401 F.3d 471, 483-85 (7th Cir. 2005), that resulted

in a reduction of his prison term to 15 years, Gardner moved under § 2255 to vacate his conviction. He argued that his lawyer's refusal to file a suppression motion constituted ineffective assistance because it was based on the mistaken belief that the gun could not be suppressed as long as Gardner disputed possession. This was wrong, Gardner argued, because the police claimed to have found the gun during a search of his pocket, over which he had an expectation of privacy. And that expectation of privacy, Gardner continued, gave him grounds to challenge the search regardless of whether he admitted or denied possession of the gun.

In an affidavit attached to the § 2255 motion, Gardner also acknowledged for the first time that the officers did recover a gun from his pocket. He explained that he had contested possession in his motion to suppress only because he had believed that his assertions at a suppression hearing had to remain consistent with his not-guilty plea or they would be used against him at trial. He had not known otherwise, Gardner said, because counsel had not advised him of the rule in *Simmons*, 390 U.S. at 394. Gardner also reiterated in the affidavit that he never told the officers that he had visited apartment 407 or volunteered for a pat-down; instead, he elaborated, an officer ran up to him and forced him to the squad car for the pat-down search. The government's response included an affidavit from Gardner's second counsel, who said that he did not recall advising Gardner of the *Simmons* rule, but that he did remember telling Gardner that if he testified falsely at any hearing or at trial, his guidelines imprisonment range could be increased by two levels.

The district court denied the § 2255 motion. It ruled that counsel was not ineffective for failing to move to suppress because Gardner's position before trial that the police had planted a gun on him made any effort to suppress the gun a "nonstarter." The court then determined that counsel was not ineffective for failing to mention the *Simmons* rule because Gardner never told counsel that he had in fact possessed the gun. Without an assertion that Gardner was prepared to admit possession to his lawyer, the court reasoned, the lawyer could not be faulted for failing to advise Gardner that such an admission could be made at a suppression hearing without fear that the admission would then be usable at trial as evidence of his guilt.

We issued a certificate of appealability on the question whether Gardner "received ineffective assistance when his trial counsel refused to file a motion to suppress on his behalf and did not explain to Gardner that any testimony he provided at a suppression hearing could not be used against him at trial."

## II

Within the general issue of the effectiveness of counsel, Gardner focuses on two instances of deficient performance: first, counsel's refusal to move to suppress the gun that the police allegedly extracted from his pocket, and second, counsel's failure to advise Gardner of the *Simmons* rule. The government primarily addresses the second issue and takes the position that the first is outside the scope of the certificate. We reject the latter

contention. The certificate of appealability itself refers to two potential sources of incompetence—the refusal to file a motion *and* failure to render *Simmons* advice—not one. In addition, a certificate based on ineffective assistance of counsel brings up for appellate review all actions of counsel that the petitioner addressed in the district court. *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007) (citing *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)). The government does not contest that Gardner raised both grounds of ineffective assistance in his § 2255 motion, and so both are properly before us.

We begin with Gardner's *Simmons* argument, which we conclude does not support a finding of deficient performance. Gardner argues that competent counsel would have surmised that he denied possession for the sole reason that he did not know that *Simmons* prevents the government from using admissions received at a suppression hearing as evidence of guilt at trial. Gardner urges that the right created in *Simmons* has meaning only if defendants are aware of it, and that lay defendants will not have the necessary knowledge unless the lawyer discusses the point. But these arguments assume a duty to discuss *Simmons* even when counsel has no reason to disbelieve a client's denial of possession. Gardner does not point to any evidence in the record contradicting the district court's finding that Gardner himself did not tell counsel that he possessed the gun, and so counsel had no reason to delve into a series of "what if's" based on hypothetical possession. Although a savvy criminal defense lawyer might well

question a client's denial of possession in this type of proceeding, we are not prepared to hold that a competent lawyer must always assume that her clients lie when they deny possession. See *Emmett v. Kelly*, 474 F.3d 154, 168 (4th Cir. 2007) (ruling that a competent defense counsel need not "presume that his client . . . is being deliberately misleading" because otherwise counsel would be in "an impossible position" of being "unable to trust the word of the client . . . ."); *United States v. Ausmus*, 774 F.2d 722, 727 (6th Cir. 1985) ("Professional standards do not require counsel to disbelieve a client and check with other sources unless counsel has a basis for such disbelief.").

We now return to Gardner's first issue—whether counsel rendered constitutionally deficient performance when, relying on a misunderstanding of the law, he refused to move to suppress the results of Gardner's frisk. See *Johnson v. United States*, 604 F.3d 1016, 1019-21 (7th Cir. 2010); *Bynum v. Lemmon*, 560 F.3d 678, 684-85 (7th Cir. 2009); *United States v. Spence*, 450 F.3d 691, 694-95 (7th Cir. 2006). Gardner's attorneys, the prosecutor, and even the district court all believed that he had to admit to actual possession of the gun to challenge its seizure. Yet no one cited a case that supports this principle. The district court referred to *United States v. Colón Osorio*, 360 F.3d 48, 52 (1st Cir. 2004), but in that case the First Circuit *declined* to address whether a district court correctly denied a motion to suppress where the defendant had argued that the police planted the firearm he wanted to exclude.

In fact, no such case could have been found. A defendant who wishes to bring a Fourth Amendment challenge need only show that he had a legitimate expectation of privacy in the area searched. *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998); *United States v. Crowder*, 588 F.3d 929, 934 (7th Cir. 2009); *United States v. Alexander*, 573 F.3d 465, 472 (7th Cir. 2009); *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007). As Gardner has argued throughout this case, and as the government concedes, he had a reasonable expectation of privacy in his own person and clothing. *E.g.*, *United States v. Gray*, 491 F.3d 138, 146 n.3 (4th Cir. 2007). Thus, he certainly had the necessary privacy interest to support a challenge to the officers' pat-down search of his pockets as unconstitutional on the ground that the officers lacked reasonable suspicion to frisk him. And if the frisk was unconstitutional, then the officers' discovery of the gun, which they say resulted from the frisk, would have been barred at trial. See *United States v. Tyler*, 512 F.3d 405, 412 (7th Cir. 2008); *United States v. Swift*, 220 F.3d 502, 506-07 (7th Cir. 2000).

The government counters that any effort to suppress the gun would have nonetheless failed because Gardner's insistence that he did not possess a gun necessarily means that the search was not the "but-for" cause of the discovery of the gun. See *Hudson v. Michigan*, 547 U.S. 586, 592 (2006) (stating that but-for causation is a "necessary . . . condition for suppression"). Therefore, the government maintains, the gun could not have been suppressed even if the search was unlawful. But an unlawful search does "cause" the discovery of a planted gun if the search enabled the police to plant it. A

defendant seeking to have evidence suppressed as the fruit of an illegal search need only establish a "factual nexus between the illegality and the challenged evidence." *United States v. Ienco*, 182 F.3d 517, 528 (7th Cir. 1999) (citing *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980)); see also *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007). Gardner easily could have satisfied that burden by pointing to the police reports asserting that the officers found a gun in his pocket. *Cf. United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993) (explaining that courts must look at evidence from both sides when determining whether defendant has expectation of privacy). He need not confess under oath to possession to show a "factual nexus." Furthermore, if the body frisk was unconstitutional, then the officers would not have been permitted to testify about anything—including the gun—that they allegedly found as a result of it. See *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *United States v. Acox*, 595 F.3d 729, 733 (7th Cir. 2010). Without a foundation for how the police obtained the gun, the government would not have been able to admit the gun at trial, and the case against Gardner would have collapsed.

If we were to adopt the government's view, a defendant who truthfully contends that police stopped him unlawfully and planted a gun on him during a suspicionless search would be able to challenge the search only by perjuring himself at a suppression hearing by falsely stating that he possessed the gun. It should go without saying, however, that perjury is never required—it is not even permitted. Such lies could also

expose a defendant to impeachment at trial if he later truthfully denied possession. See *United States v. Salvucci*, 448 U.S. 83, 93-94 & n.8 (1980); *Reinert v. Larkins*, 379 F.3d 76, 96 n.5 (3d Cir. 2004); *Guenther v. Holmgreen*, 738 F.2d 879, 886 n.7 (7th Cir. 1984). To avoid perjury and impeachment, the defendant's only alternative would be to forfeit a challenge to the search and rest his hopes on the jury's believing his testimony that the police planted a gun. The law is not that harsh. A defendant with two legitimate defenses to a possession charge is not forced to pick just one—indeed, he is entitled to present inconsistent positions if he wishes. See *Mathews v. United States*, 485 U.S. 58, 64-66 (1988); see also *Johnson*, 604 F.3d at 1021 (noting no inherent conflict between defense that police search of car violated Fourth Amendment and defense that defendant had no knowledge of drugs found in car); *United States v. Moran*, 503 F.3d 1135, 1146-47 (10th Cir. 2007) (explaining that to prove possession of firearm by felon government must prove that possession was voluntary).

We also reject the possibility that counsel's failure to move to suppress was based on a reasonable trial strategy rather than a misapprehension of law. See *Strickland*, 466 U.S. at 689. Gardner's second lawyer stated in his affidavit that he advised Gardner against falsely testifying at any hearing (perfectly reasonable advice in isolation). The district court appeared to infer from this statement that counsel decided against moving to suppress the gun as a matter of prudence because Gardner's denial of possession might be deemed perjurious, leading to an increase in his offense level at

sentencing for obstruction of justice. See U.S.S.G. § 3C1.1. We reject this inference, which even the government does not embrace, because it is contradicted by the rest of the record. The trial judge twice told Gardner in the presence of his second counsel that both of his attorneys had correctly advised him that he was forbidden from asking to suppress the gun while denying that the police found it on him and then took it. The second time, counsel confirmed that he had repeatedly advised Gardner on this "issue." We thus conclude that Gardner's lawyers abstained from moving to suppress because they thought, incorrectly, that the law prohibited them from doing so absent a confession to possession, and not because it was prudent.

Counsel's belief that the law required Gardner to confess to possession, which the district court echoed, was a misapprehension of law that, as in *Johnson*, 604 F.3d at 1019-21, prevented counsel from seeking to suppress critical evidence. The only remaining question, which the government does not discuss but which we consider important enough to raise, is whether counsel's performance is somehow excused because the district court endorsed the error. We think that a blanket rule to this effect—*i.e.*, no matter how egregious the district court's error, counsel has no independent obligation to perform competently—would be inconsistent with the guarantee of effective assistance of counsel that the Sixth Amendment assures and that *Strickland* elaborates. Under that regime, counsel, not the court, is responsible for protecting the interests of the accused, and it is counsel's performance that must be assessed objectively.

Moreover, we know from *Bowles v. Russell,* 551 U.S. 205 (2007), that fundamental mistakes by the district court (in that case, believing that it could extend the time in which to file a civil appeal) do not necessarily excuse counsel's actions. In *Bowles,* the error could not be overlooked because it had jurisdictional significance. Here, it does not, but if counsel had understood the law properly and filed the proper motion, the district court might have realized that it needed to revisit the governing cases and the error would have been nipped in the bud. Any error that the district court made with respect to the suppression motion could have been cured on appeal.

Because the district court found it unnecessary to reach the second part of the ineffectiveness inquiry— prejudice—we cannot resolve the case at this stage. Instead, the proper step is to remand for an evidentiary hearing on prejudice. This will require an assessment of the likelihood that a motion to suppress would have been granted. We do not regard the outcome of that inquiry as inevitable one way or the other. As far as we can tell at this point, although this is not a case where the motion to suppress would certainly have been successful but for counsel's blunder, see *Owens v. United States*, 387 F.3d 607, 607-09 (7th Cir. 2004), Gardner might have prevailed, see *Johnson*, 604 F.3d at 1020-21; see also *Gentry v. Sevier*, 597 F.3d 838, 851-52 (7th Cir. 2010) (finding deficient performance when record gave no indication that the motion to suppress critical evidence that counsel refused to file would have been futile). Gardner's allegations that the police accosted him with-

out provocation, coupled with the evidence of his physical dissimilarity to the armed assailant described by the dispatcher, could have resulted in a ruling that the pat-down search violated the Fourth Amendment. See *Ienco*, 182 F.3d at 523-24. The government may try to impeach Gardner's credibility, but of course credibility determinations are for the district court to make in the first instance. See, *e.g.*, *Formella v. U.S. Dep't of Labor*, 628 F.3d 381, 391 (7th Cir. 2010).

Accordingly, we REVERSE the district court's decision and REMAND for an evidentiary hearing to determine whether counsel's failure to file a suppression motion prejudiced Gardner and for any other proceedings consistent with this opinion.