In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2792

SALOME VARELA,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1945—**Charles R. Norgle, Sr.**, *Judge.*

SUBMITTED JANUARY 3, 2007[Œ]—DECIDED FEBRUARY 26, 2007

Before KANNE, ROVNER, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury found Salome Varela guilty
of one count of participating in a RICO conspiracy, 18
U.S.C. § 1962(d); four counts of violating the Hostage
Taking Act, 18 U.S.C. § 1203(a); one count of conspiracy to
kidnap, *id.*; one count of kidnapping, 18 U.S.C. § 1201(a);
one count of assault on a federal officer, 18 U.S.C. § 111;
and three counts of using a firearm during a crime of

---

[Œ] The parties have waived oral argument. Thus, the appeal is
submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)
and Cir. R. 34(f).

violence, 18 U.S.C. § 924(c). On January 28, 1998 the district court sentenced Varela to consecutive terms of life and forty-five years' imprisonment. After his conviction and sentence were affirmed on direct appeal, Varela filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his Sixth Amendment confrontation right was violated when a witness testified as to the incriminating statements of a non-testifying co-defendant. Finding, as the district court did, that the issue is procedurally barred, we affirm the decision below.

## I. BACKGROUND

### A. *Factual Background*

Varela and his co-defendants at trial, Miguel Torres, Jose de la Paz Sanchez, and Jesus Ruiz, kidnapped four victims in an attempt to collect drug debts believed to be owed by either the victims or their family members. Each victim was kidnapped in a blue and white conversion van during June 1996. Victims were then taken to one of two locations in Chicago, either a house on Newland Avenue or an apartment on Moody Avenue, where they were handcuffed and beaten. The kidnappers then contacted family members of the victims and demanded ransom payments. Three of the four victims were able to escape but seventeen-year-old Jaime Estrada was not so fortunate.

In order to show the seriousness of their threats, the kidnappers shot Estrada in the abdomen with a hollow-point bullet, leaving a one and one-half inch wound. The kidnappers called Estrada's family, informed them that he had been shot, and demanded $30,000 in ransom. The Estrada family contacted the FBI and recorded several ransom calls, some of which were made by Varela. Estrada's brother complied with the ransom demand by

leaving $30,000 in a suitcase in a locked car at 44th and Pulaski in Chicago. Varela, Ruiz, and Torres arrived to retrieve the ransom while Sanchez stayed behind to watch over Estrada. When Ruiz attempted to enter the ransom car, FBI agents moved in. A high-speed chase ensued, during which Varela pointed a pistol at an FBI agent. The kidnappers were apprehended after a dangerous chase reaching nearly 100 m.p.h. on the Stevenson expressway.

At the time of arrest Varela had in his possession: keys to the Newland Avenue house, a .45 caliber magazine, loose .380 caliber ammunition, two pagers, and a piece of cardboard with Estrada's brother's cell phone number written on it. Agents found the blue and white van used in the abductions, which contained bulletproof vests and blood that was later identified through DNA testing as Jaime Estrada's. Varela's fingerprints were inside of the van, as well as at the Newland Avenue house and the Moody Avenue apartment. The Moody Avenue apartment was linked to Estrada through blood and fiber evidence, and the Newland Avenue house contained handcuffs, an assault rifle, ammunition, duct tape handcuffs, documents for the purchase of the van, and the keys to the van. Eyewitnesses identified Varela as one of the kidnappers at trial, and witnesses also testified that the voice on some of the recorded ransom calls was his.

Estrada was found alive at a used car lot on the west side of Chicago the day after the arrest and more than twenty-four hours after he was shot. Estrada died from his injuries and the delay in treatment thirty days later. The bullet he was shot with was consistent with a bullet fired from the assault rifle found in the Newland Avenue house.

## B. Procedural Background

At trial, Cosme Duarte, a relative of all four defendants, testified as to statements that Sanchez had made to him.

He testified that Sanchez came to his house one morning and asked him in private whether he knew anyone with medical training who could provide treatment to someone that he and the kidnappers had shot. Duarte further testified that Sanchez returned several days later to ask for help again and explained that they had abandoned the person they shot, and that the other kidnappers had been arrested while attempting to pick up the ransom. Evaristo Ramirez, an acquaintance of all four defendants, also testified that Sanchez asked him for help. Sanchez was arrested in California on July 19, 1996.

After a jury trial, Varela was convicted of all charges against him and sentenced to consecutive terms of life imprisonment plus forty-five years. On direct appeal, Varela argued that Duarte and Ramirez's testimony as to Sanchez's statements was inadmissible hearsay under Rules 804(b)(3) and 801(d)(2)(E) of the Federal Rules of Evidence. After oral argument, and before the court's decision, Varela submitted the Supreme Court's plurality decision in *Lilly v. Virginia* as supplemental authority. *See* 527 U.S. 116 (1999). *Lilly* examined the rule that allowed hearsay evidence that fell into a "firmly rooted" hearsay exception to be admitted at trial despite the protections of the Confrontation Clause. *Id.* at 126 (citing *White v. Illinois*, 502 U.S. 346 (1992); *Ohio v. Roberts*, 448 U.S. 56 (1980); *Mattox v. United States*, 156 U.S. 237 (1895)).

A hearsay exception is "firmly rooted, if in light of longstanding judicial and legislative experience it rests on such a solid foundation that admission of virtually any evidence within it comports with the substance of the constitutional protection." *Lilly*, 527 U.S. at 126 (internal citations, alterations, and quotations omitted) (citing *Idaho v. Wright*, 497 U.S. 805, 817 (1990); *Roberts*, 448 U.S. at 66)). The *Lilly* Court cautioned against sweeping the out-of-court incriminating statements of co-conspirators into the exception to the hearsay rule for statements against penal interest and noted that these statements do

not necessarily carry independent guarantees of trustworthiness. *Lilly*, 527 U.S. at 126. Thus, "an accomplice's statements that shift or spread the blame to a criminal defendant . . . fall[ ] outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.'" *Id.* at 133 (quoting *White*, 502 U.S. at 357). While accomplice statements may not automatically be deemed trustworthy, a review of the facts surrounding the statement may prove it reliable, and thus admissible. *Id.* at 137-38.

Varela had the opportunity to submit *Lilly* as supplemental authority before this court made its decision on direct appeal, and it was in fact binding on this court. Nonetheless, Varela's conviction and sentence were affirmed. It is for this very reason that the district court found Varela's Confrontation Clause argument to be procedurally barred in this case, and denied his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Varela appealed to this court and the parties agreed to waive oral argument.

## II. ANALYSIS

We review the district court's denial of § 2255 relief *de novo* and its findings of fact for clear error. *Cooper v. United States*, 378 F.3d 638, 640 (7th Cir. 2004).

The crux of Varela's argument before this court is that Duarte and Ramirez's testimony that Sanchez (Varela's co-defendant) came to them asking for help with a wounded victim he and others had kidnapped is unreliable, inadmissible hearsay under *Lilly*. Before we can reach the merits of this argument, we must determine whether the issue is procedurally barred.

A § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*,

75 F.3d 1174, 1177 (7th Cir. 1996) (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds)). Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford*, 975 F.2d at 313.

Varela argues that *Lilly*'s requirement of particularized guarantees of trustworthiness for the admission of the out-of-court statements of co-conspirators constitutes changed circumstances such that this court should reconsider the admissibility of Sanchez's incriminating statements. But on direct appeal, Varela argued that Sanchez's statements were inadmissible hearsay under the Federal Rules of Evidence. *Lilly* was decided after oral argument, and Varela submitted it to the court as supplemental authority before we issued our decision. Despite *Lilly*, we found the statements admissible. The issue was before us and there are no changed circumstances warranting a reconsideration of the issue. Alternatively, Varela argues that the government has waived the argument that the issue is procedurally barred by failing to raise it below. However, it is within the district court's discretion to consider the default issue *sua sponte* so long as the government has not manifested, implicitly or explicitly, a decision to forego the argument. *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998) (citing *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988)). Thus, the district court properly found that Varela was procedurally barred from raising the issue of Sanchez's statements' admissibility.

Even if the issue were not procedurally barred, the requirements of *Lilly* are clearly met in this case.[1]

---

[1] The strength of the facts supporting the credibility of this testimony is why this particular argument was not specifically
(continued...)

Sanchez's statements were not made to law enforcement and were not designed to shift the blame from himself to others. Rather, Sanchez sought out family members and friends to ask for help in obtaining medical attention for Estrada after the kidnappers had shot him. The facts surrounding these statements lend credence to their reliability and render them admissible. Furthermore, the evidence against Varela presented at trial was overwhelming and any error in the admission of Sanchez's statements was harmless. *See United States v. Westmoreland*, 240 F.3d 618, 628-29 (7th Cir. 2001).

### III. CONCLUSION

For the foregoing reasons the judgment of the district court denying Varela's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is AFFIRMED.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*

---

[1] (...continued)
addressed in our opinion on direct appeal. *United States v. Torres*, 191 F.3d 799 (7th Cir. 1999).

---