In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3312

RENARDO CARTER,

*Petitioner-Appellant,*

*v.*

TIMOTHY DOUMA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 11-cv-320-wmc — **William M. Conley**, *Chief Judge*.

ARGUED NOVEMBER 3, 2014 — DECIDED AUGUST 6, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Petitioner Renardo Carter challenges his Wisconsin conviction for possessing between five and fifteen grams of cocaine with intent to deliver. At Carter's trial, a police officer testified about his work with an informant who had said Carter was involved in distributing drugs. The officer's testimony relayed the substance of the identification as well as the fact that he requested and heard

the informant call Carter to order cocaine. Carter's lawyer did not object to the testimony about the informant's out-of-court statements and actions. During closing argument, the State referred to the informant's statements and actions to support its argument that Carter possessed cocaine with intent to deliver, again without objection from Carter's lawyer.

Carter sought post-conviction relief in state court. He argued that the officer's testimony about his out-of-court conversation with the informant violated his Confrontation Clause right to cross-examine an adverse witness and that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to object to that testimony. The Wisconsin Court of Appeals rejected both claims, finding no plain error in admission of the evidence and concluding that Carter's lawyer was not ineffective for failing to object. The state court explained that admitting the testimony posed no Confrontation Clause problem because it was offered not to show the truth of what the informant said but to explain why the police investigated Carter as they did.

Carter filed a federal habeas corpus petition under 28 U.S.C. § 2254 asserting the same Confrontation Clause and ineffective assistance theories. The district court denied the petition, and we affirm that denial. While there is a good argument that Carter's trial lawyer should have objected to some of the officer's testimony about the informant and its use during closing argument, we need not determine whether his lawyer rendered constitutionally deficient assistance because Carter has not shown that the failure to object prejudiced him. The evidence shows that Carter possessed at least twelve bags of the sort commonly used to redistribute controlled substances and that each of those bags would

have held at least 1.75 grams of cocaine. Though Carter's dramatic efforts to flee the police and then to dispose of the bags while standing in a river in view of officers prevented the State from proving more definitively what those bags contained, the state court's finding of no prejudice was not unreasonable.

I. *Factual and Procedural Background*

    A. *Events Leading to Arrest*

On November 18, 2004, police narcotics investigator Michael Webster went to a motel parking lot to meet a confidential informant with a lead on a person distributing controlled substances. Officer Webster had hoped to get enough information to justify a stop of the suspected man's vehicle or otherwise to secure his arrest. After hearing about this suspicious man, Officer Webster asked the informant to point out the vehicle the man was using. During their conversation, Officer Webster saw that man leave a motel room and walk toward the vehicle. The man was Carter.

At that point, Officer Webster asked the informant to call Carter and say that he wanted to buy cocaine "teeners," one-sixteenth ounce quantities of cocaine. The informant complied, and Officer Webster made sure he could hear what the informant was saying and could observe Carter's actions in response to the informant's requests. He saw Carter pick up his phone when the informant called, and when the informant hung up, so did Carter. Shortly after the conversation ended, Carter drove away.

Officer Webster then enlisted an Officer Starks to follow and stop Carter. Carter refused to stop. This prompted a car chase—involving Officer Starks and later Officer Webster—

that ended only when Carter stopped his car and ran into the Wisconsin River near a dam. Officers Webster and Starks pursued Carter on foot. They saw from a distance that Carter was holding a large plastic bag that they thought contained a mixture of powder and crack cocaine. Officer Webster estimated that the bag was about the size of a 14-inch softball and could have contained in excess of two ounces of the powdery substance.

Officers Webster and Starks caught up with Carter in the river and arrested him there. Before they reached him, other officers on top of a nearby dam saw Carter pull small packets of a white, powdery substance out of his pockets, tear the packets open with his teeth, and dump the bags and their contents into the water. When the officers reached Carter, the bag they had seen previously was now empty, and Carter had a white, powdery substance around his mouth. At one point, Carter indicated he had ingested all of the substance, but he later said he had not swallowed any of it. Officer Webster also observed a fair amount of white residue floating on the water. Officer Starks testified that his narcotics-detection dog indicated for the presence of an odor of an illegal substance in the water near Carter.

Beyond seeing traces of the powder, Officer Webster also recovered from the river twelve "baggie corners," a type of bag smaller than the larger bag they previously saw Carter holding. In the officer's experience, people packaging controlled substances often make little bags like these by placing the substance in the corner of a sandwich bag, tying it off, and cutting away the excess bag material. Officer Webster testified that all of these smaller baggies would have fit easily within the larger bag he had seen earlier.

After Carter disposed of the substance in the river, the police were unable to recover much of it for testing. They were not able to test the baggies or powdery residue in the river, but they did test one rock found in the river and other rocks found in Carter's car. Both samples contained cocaine. The total weight of recovered cocaine was just 0.2 grams.

B. *Trial*

The State charged Carter with possessing between fifteen and forty grams of cocaine with intent to deliver. Carter's actions in the river ensured that the State had little physical evidence at trial, so the State relied primarily on the testimony of Officers Starks and Webster. Then other officers testified about the arrest, including seeing Carter in possession of bags containing a white, powdery substance and trying to dispose of the bags in the river. Officer Webster estimated that Carter had possessed at least 21 grams of cocaine before he disposed of it in the river. Officer Webster also testified that carrying that many baggie corners is strong evidence of intent to distribute the cocaine to others.

The State had planned to call the informant at trial but had waited until right before trial to disclose the informant's identity. This left Carter little time to investigate the informant's background. At Carter's request, the trial court barred the State from calling the informant as a witness. The trial court said it would permit the State to ask witnesses about their interactions with the informant so long as their testimony complied with hearsay rules.

Officer Webster testified about the informant's role in the investigation. He explained the circumstances of the meeting and said the reason they met was so that the informant could

"direct [him] to an individual that was involved in distributing controlled substances." It later came out that the person the informant referred to was Carter. Officer Webster also described what the informant said on the call with Carter and made clear that he heard the informant order "teeners" of cocaine from Carter. At no point did Carter's lawyer object to Officer Webster's discussion of the informant.

Though the State had said it would not use any of the informant's statements for their truth, the State relied on those statements in closing argument:

> Why do I feel that possession with intent has been shown here? It has been shown because you heard the testimony by Investigator Webster of a confidential informant, someone that the officer uses in drug investigations as part of a tactic that they use. I mean they have people out there who are aware of drug activity going on. They don't want to necessarily come here and divulge their name or get involved, because they might be used in continuing investigation, more than one person.

> But with that CI, he was directed to a place where that CI was. The CI came in the vehicle with him, pointed out Mr. Carter; that they went over to Econo Lodge. And as he is pointing him out, the officer said, okay, if what you are saying is true here, order some up for me. So the CI gets on the line, makes the phone call. Mr. Carter is out there answering the phone all observed by the officer. He hears him order four teeners, which he has testified is 1/16

ounce of cocaine. The CI hangs up, the defend-
ant hangs up. He then keeps surveillance the
officer does on the defendant until he becomes
mobile after the deal had been set up.

Later the State asked the jury to look at the facts and find
that possession with intent to deliver had been shown be-
cause:

You had the officer indicating that the CI said,
get me at least four teeners, 16th ounce. You
have 12 packages, not that we know that this is
all he had, but we have 12 packages that we
were able to find. And the officer said, those
could have been packages teeners, eight balls,
they could have been higher amounts of co-
caine, but I know he ordered teeners. CI or-
dered teeners, I heard him.

The jury found Carter not guilty of possessing between fif-
teen and forty grams of cocaine with intent to deliver but
convicted him of the lesser offense of possessing between
five and fifteen grams of cocaine with intent to deliver.[1]

C. *Post-Conviction Proceedings*

Carter sought post-conviction relief in state court. He ar-
gued that Webster's testimony about his conversation with
the informant denied him a fair trial. Recognizing that he
did not object at trial, he argued the testimony violated his

---

[1] Carter was also charged with three other offenses. He was convict-
ed of two (eluding an officer and resisting or obstructing an officer) and
acquitted of the third (recklessly endangering safety). Those charges are
not at issue in this appeal.

right of confrontation because it was offered for its truth and its admission amounted to plain error. Alternatively, Carter argued that his lawyer's failure to object to the testimony denied him effective assistance of counsel.

To determine whether Carter's trial counsel was ineffective in failing to object, the state trial court held a hearing pursuant to *State v. Machner*, 285 N.W.2d 905 (Wis. App. 1979). Carter's trial counsel testified that he did not think Officer Webster's testimony that the informant had directed him to a person involved in distributing controlled substances was offered for its truth. He thought this statement served to explain why the officers were interested in investigating Carter. Similarly, the testimony regarding what the informant said on the call to Carter was offered not to prove it was true but to show the effect those statements had on the other party to the drug transaction—Carter—as viewed by Officer Webster. The trial court denied relief, agreeing that the testimony about the informant was not offered for its truth.

Carter appealed to the Wisconsin Court of Appeals. Turning first to whether Carter's counsel was ineffective, the court concluded that "the officer's testimony about what he actually observed and overheard while with the informant was not offered to establish that Carter was selling drugs but, rather, provided background information for the jury to understand why the police tried to stop Carter's vehicle and chased him when he sped away." On this view, admitting the testimony did not violate the Confrontation Clause and the failure to object was not deficient performance by counsel. The court also found that any claimed deficiency would not have resulted in prejudice, finding "no reasonable prob-

ability that absent this testimony, the result would have been different." The state appellate court also concluded that admitting the testimony had been neither a plain error nor a reason for a new trial in the interest of justice. In fact, the court was "not convinced that admission of the challenged testimony constituted error, much less plain error." The Wisconsin Supreme Court denied further review.

Carter then filed a federal habeas corpus petition under 28 U.S.C. § 2254 challenging the validity of his state court conviction. The district court denied the petition, concluding that the state court had not unreasonably applied *Strickland* in finding that counsel was not deficient and that Carter was not prejudiced by any possible deficiency. The district declined to issue a certificate of appealability.

Carter appealed. We granted his request for a certificate of appealability as to: (1) whether Officer Webster's testimony concerning the informant violated the Confrontation Clause; and (2) whether trial counsel was ineffective for failing to object to that testimony. Carter raises both of these grounds on appeal.

II. *Habeas Corpus Review Under 28 U.S.C. § 2254*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Carter must satisfy two statutory requirements to prevail on his federal habeas petition. First, he must establish that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Second, since the state appellate court ruled on the merits of his claims, he must also go further and show that his detention is the result of a state court decision that was (1) "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

To prevail in federal court, Carter must show that the state appellate court's ruling on either claim was "objectively unreasonable, not merely wrong; even clear error will not suffice." *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014), quoting *White v. Woodall*, 572 U.S.—, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). That is, the ruling must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The district court reviewed these claims under that standard and concluded that the state court's rejection of Carter's claims was not objectively unreasonable. We review that conclusion *de novo*. *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011).

A. *Confrontation Clause*

Carter challenges directly the State's use of the informant's statements on Confrontation Clause grounds. He argues that the state court unreasonably applied *Crawford v. Washington*, 541 U.S. 36 (2004). The State argues that Carter's procedural default, in the form of the failing to object at trial, provides an independent and adequate state law ground for denying relief on this claim. We agree with the State.

If a state court denies relief "by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586,

591 (7th Cir. 2010), citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A procedural failure to raise the federal claim as required by state procedural rules, often called a procedural default, is a common example of such an independent and adequate state ground. *Id.* at 591–92.

When the state presents this as an affirmative defense in federal court and the defense is found to apply to a petitioner's claim, the federal court cannot entertain the claim unless the petitioner persuades the federal habeas court to excuse the default. Petitioner can do so by establishing cause for failing to follow the state procedural rules and a resulting prejudice from his failure to do so. See *id.* at 591; *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 90 (1977). A procedural default may also be excused if a failure to consider the claim would result in a "fundamental miscarriage[] of justice" because "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Wrinkles*, 537 F.3d at 812 n.3 (alteration in original), quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

The state court declined to give full review to Carter's Confrontation Clause claim because he failed to comply with Wisconsin's contemporaneous objection requirement at trial. See *Kaczmarek*, 627 F.3d at 592 ("A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case."). Under Wisconsin law, a defendant waives an objection—whether based on state law or an alleged violation of a constitutional right—when it is not made at the time the alleged error takes place. See Wis. Stat. § 901.03(1)(a); *State v. Erickson*, 596 N.W.2d 749, 754–55 (Wis. 1999) (declining to excuse

waiver and instead reviewing unobjected-to claim as claim for ineffective assistance of counsel); *State v. Hansbrough*, 799 N.W.2d 887, 896 (Wis. App. 2011).

Here the state court recognized this failure to object and said that it considered the merits of the Confrontation Clause claim only as a basis for Carter's ineffective assistance claim or under plain-error or interest-of-justice review. That more limited review is not a decision on the merits that allows us to consider the claim on federal habeas review. See *Kaczmarek*, 627 F.3d at 592; *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010); cf. *Malone v. Walls*, 538 F.3d 744, 756–57 (7th Cir. 2008) (when state court makes clear that it is resolving a federal issue despite procedural problems, federal courts can consider merits). The state court concluded that Carter was not entitled to relief under any of these more limited forms of relief.

In Wisconsin, it is common for state courts to analyze a failure to object as a claim for ineffective assistance of counsel. Doing so does not mean that the state court resolved the merits of the underlying waived claim. See *Erickson*, 596 N.W.2d at 754 ("[T]he normal procedure in criminal cases is to address waiver within the rubric of the ineffective assistance of counsel."); *State v. Hayes*, 681 N.W.2d 203, 223–24 (Wis. 2004) (Sykes, J., concurring); *State v. Benson*, 822 N.W.2d 484, 489 (Wis. App. 2012). In Wisconsin, then, there is strong support for what we already presume under federal habeas practice: a state court's rejection of the ineffective assistance of counsel claim does not constitute a decision on the merits of the underlying claim. See *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("A meritorious claim of attorney ineffectiveness might amount to cause for the failure to

present an issue to a state court, but the fact that the ineffectiveness claim was raised at some point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise.").

Accordingly, Carter has procedurally defaulted his Confrontation Clause claim. He has not tried to show either "cause and prejudice" or that a failure to consider his Confrontation Clause claim would result in a fundamental miscarriage of justice. Carter is not entitled to relief on that claim.

B. *Ineffective Assistance of Counsel*

In Carter's view, his lawyer's failure to object to use of the informant's out-of-court statements for their truth means that his lawyer rendered ineffective assistance of counsel within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984). He argues the State's use of those statements was clearly barred by the rule announced in *Crawford v. Washington*, 541 U.S. 36, 68 (2004), that out-of-court testimonial statements cannot be admitted against a criminal defendant unless the declarant is unavailable and the defendant had a prior chance to cross-examine the declarant. Although this claim is framed in terms of whether Carter's lawyer was ineffective rather than the Confrontation Clause itself, the *Crawford* issue is nonetheless integral to the *Strickland* analysis here. See *Campbell v. Smith*, 770 F.3d 540, 547 (7th Cir. 2014) (addressing ineffective assistance of counsel claim based on an embedded constitutional issue). Carter argues that the state court unreasonably applied both *Crawford* and *Strickland* in denying him post-conviction relief.

Under *Strickland*'s familiar two-pronged standard, Carter must show both that his counsel's performance was deficient and that he was prejudiced as a result. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Here, the state court decided that counsel's performance was not deficient and that even if it had been, Carter was not prejudiced. Our review of each prong of the *Strickland* analysis is subject to AEDPA's deferential standard of review under § 2254(d)(1). *Sussman v. Jenkins*, 636 F.3d 329, 350–51 (7th Cir. 2011). Once AEDPA applies, "[t]he bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Id.* (alteration in original) (citation omitted).

To argue his trial lawyer's performance was deficient, Carter relies on his counsel's failure to object to two portions of Officer Webster's testimony and the prosecution's use of them in closing argument. First, he asserts that Officer Webster should not have been able to testify that he instructed the informant to call Carter to request "teeners" and that the informant did so. This theory has no merit. The officer's instruction and the informant's request for "teeners" were not hearsay because they were not "statements" making any factual assertions. See, e.g., *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) ("Statements that constitute verbal acts (e.g., words of contract or slander) are not hearsay because they are not offered for their truth."); *United States v. Moreno*, 233 F.3d 937, 940 (7th Cir. 2000). Nor were they testimonial for purposes of the Confrontation Clause. *Crawford*, 541 U.S. at 59 n.9. That portion of Officer Webster's testimony merely described verbal acts, his own instruction, and the informant's offer to buy, all of which Webster made and/or saw and

heard himself. Such verbal acts are not statements offered to prove the truth of their contents.

If Carter's counsel had objected to this testimony on hearsay or Confrontation Clause grounds, his objection should have been overruled. His performance was not deficient by failing to make a futile objection. See *Lambert v. McBridge*, 365 F.3d 557, 564 (7th Cir. 2004); *United States v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999) ("Obviously, counsel can not be considered ineffective for failing to make an objection to the introduction of evidence that was properly admitted.").

Carter's second challenge has more substance. He argues that his lawyer should have objected to Officer Webster's testimony that he was investigating Carter because the informant had identified Carter as someone involved in distributing controlled substances. Carter maintains that the State also impermissibly relied on this testimony during closing argument to establish that he was guilty of possession with intent to distribute cocaine. The prosecutor reminded the jury, albeit obliquely, that the informant had identified Carter as someone involved in drug dealing. The prosecutor asked the jury to infer from the evidence that a deal had been set up and that Carter had teeners on him as the police closed in to arrest him as he stood in the river.

The state court held that counsel's failure to object could not have been deficient performance because introducing this testimony did not violate the Confrontation Clause.[2] See

---

[2] Carter argues in his reply brief that the state court failed to address the testimony regarding the informant's identification of him as a drug

*Lambert*, 365 F.3d at 564; *Neeley*, 189 F.3d at 684. Invoking the "course of investigation" gambit to avoid hearsay rules, it held this testimony was offered only to explain why the police stopped Carter and pursued him.

When the reasons for the police's actions are relevant, a witness can testify about what information prompted those actions. That is, when such a statement is offered only to show the effect it had on the police, it is used for a purpose other than the truth of its contents. E.g., *United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006) (testimony is not for its truth where it is offered "only as an explanation of why the investigation proceeded as it did"). We have applied this "course of investigation" rationale in several cases to permit the government to introduce brief out-of-court statements designed to "bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury." See *Jones v. Basinger*, 635 F.3d 1030, 1046 (7th Cir. 2011) (collecting cases). This approach is consistent with the Confrontation Clause, which "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." See *Crawford*, 541 U.S. at 59 n.9; *United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011) (testimonial statements of a witness did not violate the Confrontation Clause, because they "were not offered for their truth").

The problem, as we have explained time and again, is that the "course of investigation" gambit is so often abused and/or misunderstood that it is an evidentiary and constitutional minefield. See, e.g., *Jones*, 635 F.3d at 1046; *United*

---

dealer, but this is not correct. The state court recognized that this was part of Carter's argument.

*States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the sixth amendment and the hearsay rule."). To convict a defendant, after all, the prosecution does not need to prove its reasons for investigating him. *United States v. Mancillas*, 580 F.2d 1301, 1310 (7th Cir. 1978). When the prosecution offers out-of-court statements of non-witnesses on the theory they are being offered to explain "the course of the investigation," it runs a substantial risk of violating both the hearsay rules of evidence and the Confrontation Clause rights of the defendant under the Sixth Amendment. Both defense counsel and trial judges need to be on high alert when the prosecution offers what sounds like hearsay to explain "the course of the investigation."

Under circumstances like these, where the only reason counsel failed to object was his understanding that such testimony was not objectionable—and not some strategic judgment—counsel runs the risk of rendering performance that falls below the objective standard of reasonableness. See *Barrow v. Uchtman*, 398 F.3d 597, 605 (7th Cir. 2005) (noting that a lawyer's failure to act based on his "erroneous understanding of state law" can render his performance deficient); *Gardner v. United States*, 680 F.3d 1006, 1011–12 (7th Cir. 2012). Under AEDPA, however, the ultimate question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," and we must deny the writ if the state court offered a reasonable argument that counsel behaved competently. *Richter*, 562 U.S. at 105.

We recently addressed the scope of the "course of investigation" theory in *Jones v. Basinger*, 635 F.3d 1030 (7th Cir. 2011), when we determined that the state court unreasonably applied *Crawford* in determining that the government's use of out-of-court informant statements fell within the "course of investigation" theory. But that finding does not dictate whether the state court's use of the theory here was reasonable. First, the use of the informant testimony here was much narrower and more limited than in *Jones*, where the government misused the gambit to give the jury a detailed hearsay account that linked the defendant to four murders, explained how the murders were committed, and described what happened to the weapons afterwards. *Id.* at 1036–37. Second, in *Jones*, unlike here, we addressed the Confrontation Clause claim directly and were not encumbered by the need to give deference to counsel under *Strickland*.

We need not resolve whether the failure to object here to the arguably hearsay identification was deficient performance, however. Even if Carter's counsel might have been deficient in failing to object to Officer Webster's testimony about the informant's identification and its use during closing argument, Carter cannot show that the state court unreasonably determined that the problematic testimony did not prejudice him. See *Taylor v. Bradley*, 448 F.3d 942, 948–49 (7th Cir. 2006) (declining to resolve whether deficient performance when clear that no prejudice).

For a petitioner to have been prejudiced by his counsel's deficient performance, he must establish a reasonable probability that the result of the proceeding would have been different had counsel objected to the inadmissible testimony. See *Richter*, 562 U.S. at 104. A reasonable probability is one

that undermines confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. The likelihood of a different outcome "must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A guilty verdict that is "overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006), quoting *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A state court's application of the prejudice prong of *Strickland* is reviewed under the deferential standard of 28 U.S.C. § 2254(d).

In reviewing Carter's conviction, the state court applied the appropriate standard and pointed to all the evidence of Carter's guilt that made the court confident that the verdict was not affected by the use of hearsay. In light of that evidence, the state court reasonably determined that Carter was not prejudiced by the admission or later use of Officer Webster's testimony about the informant.

The evidence shows that Carter possessed at least some cocaine even if his efforts to dispose of the evidence ensured that only 0.2 grams of cocaine were recovered. On the disputed points—whether Carter possessed at least five grams of cocaine and whether he actually intended to deliver the cocaine he had—the State offered ample evidence of Carter's guilt. As the state court explained, the police observed Carter holding a large bag containing a substance that looked like a mixture of cocaine and crack cocaine. The officer estimated that the large bag alone might have held a couple of ounces,

or over fifty grams.[3] Beyond that, the officers recovered twelve smaller baggies (or bag corners) in the river. Officer Webster testified that the recovered baggies were prepared in such a way that they could be expected to hold either one-sixteenth or one-eighth of an ounce. Even if each contained only the smaller quantity, one "teener," Carter was in possession of well over five grams.

Carter resists using the baggies to infer that he was in possession of well over five grams, emphasizing that none of those baggies contained cocaine at the time of the arrest. But there was ample evidence that they did just before Carter was arrested. After Carter's dangerous and desperate flight from police ended with him standing in the river, Officers Webster and Starks saw him holding a larger bag that contained a substance that looked like cocaine, and also saw that he had a white, powdery substance on his mouth. The little baggies that were recovered are often used to hold controlled substances and are specifically prepared for that purpose. Police officers actually saw him pulling those bags out of his pocket and dumping the bags, along with their white, powdery contents, into the water. He was seen churning the water to disperse the substance. He was not completely successful. A white, powdery residue remained on the water, and a police dog alerted to the presence of narcotics in the water. Carter also argues that absent the informant's testimony there was no evidence that he intended to deliver cocaine. That is not correct. Officer Webster testified that the packaging and quantities indicated intent to distribute.

---

[3] An ounce is equivalent to 28.35 grams. A "teener," which is one-sixteenth of an ounce, contains about 1.77 grams. Possession of just three "teeners" would have been sufficient to support the conviction.

Given all of the evidence that Carter possessed at least five grams of cocaine and intended to deliver it, the state court did not apply federal law unreasonably in determining there would not have been a reasonable probability of a different result if Carter's attorney had objected to the use of the informant's hearsay identification of him as a person involved in distributing drugs.

The district court's judgment denying Carter's petition for a writ of habeas corpus is AFFIRMED.