In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1134

JERRY L. VINYARD,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:10-cv-00341-WDS — **William D. Stiehl**, *Judge*.

ARGUED SEPTEMBER 9, 2015 — DECIDED NOVEMBER, 4, 2015

Before POSNER, MANION, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal presents a challenge to the constitutional sufficiency of a criminal defense attorney's advice in unusual circumstances. Appellant Jerry Vinyard pled guilty to charges of conspiracy to manufacture, distribute, and possess methamphetamine with intent to distribute. At sentencing, he started to backtrack on whether he was admitting some of the relevant conduct listed in his presentence report. After consulting with his attorney, he withdrew his objections. His hesitation, however, prompted

the district judge (Judge Gilbert) to vacate his guilty plea and sentence on the court's own initiative. That led in turn to an unusual series of proceedings culminating in a writ of mandamus from this court ordering the district court to reinstate Vinyard's plea and sentence.

Vinyard still wished to challenge his guilty plea, however, and he tried to do so in the district court proceedings conducted to comply with our mandate. A different district judge (Judge Stiehl) rejected Vinyard's challenge and reinstated the plea and sentence. Vinyard then had a choice to make: he could file a direct appeal, or he could forgo that route in favor of an immediate collateral attack under 28 U.S.C. § 2255. On his attorney's advice, he chose the latter path. He now argues that advice caused him to default some of his claims and amounted to constitutionally ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Vinyard seeks reinstatement of his right to a direct appeal.

The district court denied relief, concluding that the decision to forgo a direct appeal was strategic and not objectively unreasonable, and that Vinyard could not show prejudice in any event. This court granted a certificate of appealability on only that claim. After full briefing and argument, we affirm the denial of relief because Vinyard has shown neither deficient performance nor prejudice under *Strickland*.

I. *Factual and Procedural Background*

Vinyard's only claim on appeal is that his attorney was constitutionally ineffective when he advised Vinyard to challenge his guilty plea as part of a collateral attack under § 2255 without first pursuing a direct appeal. That advice,

Vinyard contends, was wrong because as a general rule "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). The government defends the attorney's advice as a reasoned strategic decision—a decision, moreover, with which Vinyard agreed at the time—and argues that even if the advice was wrong, Vinyard suffered no prejudice by following it. This court reviews the district court's denial of a § 2255 petition *de novo* with regard to issues of law, and we review factual findings for clear error. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013), citing *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002).

The procedural history of this case is unusual and central to the ineffective-assistance-of-counsel claim. We must review the relevant portions in some detail. Vinyard was arrested on April 27, 2006 for participating in a conspiracy to manufacture and distribute methamphetamine. Vinyard decided to plead guilty. He signed a stipulation of facts admitting: that he had been involved in the conspiracy; that his role had been to obtain "precursor materials" such as pseudoephedrine pills and anhydrous ammonia for use in methamphetamine cooks; and that the total amount of methamphetamine involved in the conspiracy exceeded 500 grams.

Judge Gilbert held a guilty plea hearing on November 7, 2006. Much of that hearing, including the adequacy of the district court's guilty plea colloquy with Vinyard, is not before this court. Relevant to the present appeal, however, the government explained its evidence, which tracked the stipulation of facts that Vinyard had signed. Vinyard agreed that

the government's recitation was correct. When the judge asked if any threats or promises had been made to induce his plea, Vinyard said no. When asked if his plea was his own free and voluntary act, he said it was. The judge accepted the guilty plea and set a date for sentencing. Before the hearing concluded, Vinyard's attorney, Susan Gentle, noted for the record that the parties had agreed that the government would not proceed with a forfeiture action against Vinyard's home and property.

The court sentenced Vinyard on May 3, 2007. The presentence investigation report indicated that Vinyard was responsible for 36,491 grams of a mixture or substance containing methamphetamine, 36,000 of which stemmed from an incident in which Vinyard supplied tanks to store 300 gallons of anhydrous ammonia stolen by his co-conspirators. Vinyard's attorney did not object to the report. When Judge Gilbert asked Vinyard directly if he wanted to correct any errors or make any alterations, Vinyard declined. Later on, however, Vinyard questioned the accuracy of the report. He told the judge that although he was guilty, he was "not guilty of everything that I'm accused of" and that, of the 36,491 grams of methamphetamine listed in his presentence investigation report as relevant conduct, "36,000 of that does not belong on there. Is simply not true. I did not do that."

Understandably troubled by this sudden change in Vinyard's position, Judge Gilbert asked Vinyard if he wished to object to the relevant conduct identified in the presentence report. The prosecutor said there was no "realistic possibility" that the relevant conduct would fall below 500 grams of methamphetamine, the threshold needed to apply the twenty-year mandatory minimum sentence in light of Vinyard's

criminal record. The court recessed while Vinyard consulted with his attorney. After that consultation, Vinyard said he would not contest the relevant conduct described in the presentence investigation report. He specifically declined to contest whether the relevant conduct involved more than 500 grams of methamphetamine. Judge Gilbert then sentenced Vinyard to the mandatory minimum of 240 months in prison.

Judge Gilbert remained troubled by Vinyard's protests at sentencing. The next day, May 4, without first notifying the government, he ordered that Vinyard be released on bail. The order was not filed until May 7, however, and the government learned of Vinyard's release only when an agent saw him walking into the Probation Office. The government immediately appealed the release order. On May 10, it filed an additional motion to reverse the release order. That same day, Judge Gilbert vacated the release order and directed Vinyard to surrender to the United States Marshal, mooting the first appeal. The judge also sua sponte vacated Vinyard's guilty plea and sentence and ordered that new counsel be appointed to represent him, terminating attorney Gentle and appointing attorney Gene Gross in her place. The government appealed again and on June 5 moved for a stay in both the district court and this court.

Judge Gilbert granted the motion to stay on June 13 and explained his reasons for vacating the plea and sentence. He was concerned that Vinyard had not agreed knowingly and voluntarily to the relevant conduct in the presentence investigation report. The judge also believed he had not adequately informed Vinyard of his right to challenge a prior conviction that raised the mandatory minimum sentence to twenty

years under 21 U.S.C. §§ 841 and 851. With its second appeal still pending, the government then petitioned for a writ of mandamus to compel the district court to reinstate the plea and sentence.

This court granted the writ, holding that the district court had committed patent error and that the government had demonstrated irreparable harm. See *United States v. Vinyard*, 539 F.3d 589, 595 (7th Cir. 2008). While expressing doubt that the district court had erred at all in failing to inform Vinyard of his rights under § 851 or in adopting the relevant conduct described in the presentence investigation report, we held that neither arguable error could call the guilty plea itself into question. *Id.* at 593–94. We further held that neither error warranted relief from the sentence. *Id.* Accordingly, we vacated the district court's May 10 order and issued a writ mandating "that judgment be entered pursuant to the May 3, 2007 sentence pronounced by the district court." *Id.* at 595.

The case returned to the district court, where Judge Gilbert recused himself. The case was reassigned to Judge Stiehl. Vinyard then filed for the first time a motion to withdraw his guilty plea, which Judge Stiehl denied on May 20, 2009. Recognizing the rarity of the situation, the judge correctly noted that the remand was "very simply a mandamus directing the Court to enter judgment on the sentence." Judge Stiehl concluded that he could not grant Vinyard relief because of the specific and limited nature of the remand. He denied Vinyard's motion and noted that Vinyard was "not without remedy as he may challenge his plea on direct appeal of this sentence, or on habeas review." The district court entered judgment on June 8, 2009.

At that point, attorney Gross offered the advice that Vinyard now challenges. Gross and Vinyard discussed whether to pursue a direct appeal of the conviction and sentence. Vinyard's affidavit in support of his § 2255 petition says that Gross advised him "that the record was not sufficiently developed to pursue a direct appeal, that the best issue I had going for me was a claim of ineffective assistance of counsel and the appropriate vehicle to pursue this claim was through a § 2255 motion." Vinyard took that advice, and the period for filing a direct appeal expired. A letter from Gross to Vinyard dated April 5, 2010 provides further insight into the challenged advice:

> 1. The thrust of our motion is not a sentencing argument. The thrust of our motion is that you received ineffective assistance of counsel in that objections were not filed to the PSR and you were allowed to plead guilty to the offense of conspiracy over 500 grams. As I point out in the motion, the plea agreement did not comply with Rule 11 concerning plea agreements, in that all of the information was not presented to the Court (which is clear from the transcript concerning threats of forfeiture).[1]
>
> 2. The decision to pursue issues of ineffective assistance or proceed with direct appeal [was]

---

[1] The Rule 11 issue referred to in the April 5 letter was that counsel had failed to disclose a plea agreement that existed in the form of the government's promise not to pursue forfeiture proceedings against Vinyard's home if he pled guilty. As noted, however, Vinyard's lawyer had disclosed that promise to the court on the record at the guilty plea hearing.

discussed last year. I believe you have made the right decision in that the only direct appeal issues would be whether or not Judge Gilbert properly advised you of your right to contest the [§ 851] enhancement. I am still convinced that your most likely avenue for relief is collateral attack and not direct appeal. The most persuasive features of your case are Judge Gilbert's Orders following your first sentencing hearing and his action in removing your first attorney.

On May 6, 2010, Vinyard filed his own § 2255 petition pro se, apparently due to concerns that his attorney had not yet filed one despite the looming deadline. His petition raised the expected ineffective-assistance claims against his first attorney (Gentle), but it also raised several others, including a claim that his second attorney (Gross) was ineffective for advising him to pursue a collateral attack on his plea in lieu of a direct appeal. This advice, Vinyard contended, was legally erroneous and caused his procedural default of certain meritorious claims.

Judge Stiehl denied relief. *Vinyard v. United States*, No. 10-CV-341-WDS, 2013 WL 6153268 (S.D. Ill. Nov. 22, 2013). He found that the decision to pursue a collateral attack under § 2255 instead of a direct appeal was "undoubtedly" strategic and that Vinyard had agreed with his attorney that a collateral attack was "the best course." *Id.* at *18. The claims Vinyard argued he would have raised on direct appeal did "not appear to be claims that could not be raised on collateral attack," and he had in fact raised them in his § 2255 peti-

tion. *Id.*[2] Thus, Gross's advice to pursue "further factual development beyond the criminal record" was not objectively unreasonable, and Vinyard also could not show prejudice. *Id.* The court rejected Vinyard's other plea-related claims as well, holding that he had procedurally defaulted the direct attack on his guilty plea, *id.* at *20, and that his first attorney had not provided ineffective assistance by permitting the government to coerce him into pleading guilty, *id.* at *9–11.

We granted a certificate of appealability as to whether Vinyard's attorney "rendered ineffective assistance by erroneously advising him that he could challenge his guilty plea only on collateral attack and not on direct appeal."

II. *Analysis*

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal case the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009). This right is "firmly established" not only for trial but also for a first appeal as of right. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985), citing *Evitts v. Lucey*, 469 U.S. 387 (1985). Under the familiar two-pronged test of *Strickland*, Vinyard must show both that his attorney's performance was deficient and that he was prejudiced as a result. E.g., *Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015), citing *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

---

[2] Those claims included: (1) Vinyard's plea was coerced by the government; (2) the district court was not informed of an oral plea agreement between Vinyard and the government; and (3) the district court had removed Vinyard's first attorney on its own motion. *Vinyard*, 2013 WL 6153268, at *17.

To satisfy the deficient performance prong, a petitioner must show that the representation his attorney provided fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002). A court's scrutiny of an attorney's performance is "highly deferential" to eliminate as much as possible the distorting effects of hindsight, and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; see also *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). Under these standards, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; see also, e.g., *United States v. Berg*, 714 F.3d 490, 499 (7th Cir. 2013) (decision not to call a particular witness); *Harris v. United States*, 366 F.3d 593, 596 (7th Cir. 2004) (decision not to advocate for guideline "safety valve" at sentencing).

A strategic choice based on a misunderstanding of law or fact, however, can amount to ineffective assistance. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. —, —, 134 S. Ct. 1081, 1089 (2014); see also, e.g., *Thomas v. Clements*, 789 F.3d 760, 768–69 (7th Cir. 2015) ("counsel admitted his failure to reach out to [a pathology] expert was not a conscious decision—he just did not think to do so"); *Woolley v. Rednour*, 702 F.3d 411, 423 (7th Cir. 2012) ("Though we often defer to an attorney's calculated decision to forgo a certain trial strategy, it is undisputed that there was no strategic rationale underlying these errors.").

These principles apply with equal force to appeals. An attorney is not expected to raise every possible non-frivolous claim on appeal; winnowing down possible claims to those an attorney believes are strongest is a classic example of a strategic decision. *Makiel v. Butler*, 782 F.3d 882, 897–98 (7th Cir. 2015). A decision not to file a notice of appeal at all will be appropriate if the lawyer has consulted adequately with her client about the decision. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). And of course, a defendant who instructs his attorney not to appeal cannot claim deficient performance when the attorney complies with his wishes. *Id.* at 477, citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983). But if a lawyer has been instructed to appeal and inadvertently fails to do so, she has acted "in a manner that is professionally unreasonable" under the Sixth Amendment. *Flores-Ortega*, 528 U.S. at 477, citing *Rodriquez v. United States*, 395 U.S. 327 (1969); see also, e.g., *Kitchen v. United States*, 227 F.3d 1014, 1020 (7th Cir. 2000); *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994) ("If the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal. Abandonment is a *per se* violation of the sixth amendment.") (emphasis in original).

Vinyard concedes that he never instructed Gross to file a notice of appeal. Vinyard agreed that not appealing would be the "best course." *Vinyard*, 2013 WL 6153268, at *18. Vinyard argues that ought to be irrelevant, however, because he based his decision not to appeal entirely on his lawyer's erroneous advice. Attorney Gross advised Vinyard not to pursue a direct appeal challenging the validity of his guilty plea. Vinyard argues, though, that it is well established that "section 2255 is not a substitute for direct appeal," see *Qualls*

*v. United States*, 774 F.2d 850, 851 (7th Cir. 1985), and that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States,* 523 U.S. 614, 621 (1998); see also *Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). Thus, Vinyard contends, advising a client to forgo a direct appeal of his guilty plea forecloses the possibility of collateral attack as a matter of law and cannot be a strategic decision.

One problem with Vinyard's argument is that he has been unable to explain what, exactly, he could have appealed to challenge the voluntariness of his plea. Arguments on direct appeal are "necessarily limited to the trial record, since a court of appeals does not take evidence." *United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991). In this case, the limited record that would have been available on direct appeal contains no hint of the government coercion that Vinyard now contends he would have challenged. Rather, the record offers only the plea colloquy—when Vinyard repeatedly swore that his plea was voluntary and that the government's factual basis for the charges was correct—and the stipulation of facts Vinyard signed agreeing that the conspiracy involved over 500 grams of methamphetamine.

It would make little sense to require defendants to challenge their guilty pleas on direct appeal (and as a corollary to require attorneys to advise such appeals to avoid claims of constitutional ineffectiveness) even when the challenge would depend on evidence outside the available record. See *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam) (where petitioner alleged his guilty plea was coerced by the government, that issue "was appropriately raised by the ha-

beas corpus petition. The facts relied on are dehors the record and their effect on the judgment was not open to consideration and review on appeal"); see also *Bousley*, 523 U.S. at 621–22 (distinguishing between claim that a guilty plea had been coerced by threats made by government agent, which "falls within an exception to the procedural default rule for claims that could not be presented without further factual development," and a claim that the plea colloquy was erroneous, which "can be fully and completely addressed on direct review based on the record created at the plea colloquy"). Nor could Vinyard have challenged the May 20, 2009 denial of his motion to withdraw his plea: our mandate clearly ordered entry of judgment on the original sentence, leaving the district court no room to grant Vinyard's motion.

So the record showed no non-frivolous grounds to attack Vinyard's guilty plea on direct appeal. Attorney Gross's advice to proceed instead with a collateral attack was not legally erroneous or constitutionally ineffective. In fact, if he had advised Vinyard to pursue a direct appeal of his plea, that advice would have raised a serious constitutional concern in its own right. To raise a claim on direct appeal in spite of an inadequate record would have been fruitless but also might well have resulted in procedural default because issues "raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

To illustrate this danger, consider the context of the most common sorts of claims for ineffective assistance of counsel. Like Vinyard's challenge to his plea, such claims generally depend on information outside the record available on direct appeal. The Supreme Court has definitively held that ineffec-

tive-assistance claims need not be presented on direct appeal to preserve them for collateral attack under § 2255, *Massaro v. United States*, 538 U.S. 500, 504 (2003), because ineffective-assistance claims nearly always require more extensive and targeted factual development than is available in the record on direct appeal. Furthermore, once "an ineffective-assistance claim is rejected on direct appeal, it cannot be raised again on collateral review." *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). "A litigant gets to argue ineffective assistance, and for that matter any other contention, just once." *Id.* Thus, bringing a premature claim for ineffective assistance of counsel on direct appeal is not prudent, and we have repeatedly cautioned defendants against raising such claims on direct appeal. E.g., *United States v. Bryant*, 754 F.3d 443, 444 (7th Cir. 2014) (ineffective-assistance claims "usually as a matter of prudence should not" be raised on direct appeal); *Flores*, 739 F.3d at 341 ("Raising ineffective assistance on direct appeal is imprudent because defendant paints himself into a corner."); *Harris*, 394 F.3d at 558.

These principles and the blanket exception in *Massaro* apply specifically to ineffective-assistance-of-counsel claims, but their logic applies equally to the claims Vinyard says he would have brought on direct appeal. Issues "raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007); see also *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (declining to reconsider issue previously raised on direct appeal "in the absence of changed circumstances of fact or law"). A challenge to Vinyard's plea on direct appeal, then, would have yielded procedural default, and without the benefit of the factual development that collateral attack permits.

We have previously allowed defendants to withdraw claims raised on direct appeal when oral argument made clear that those claims would benefit from additional factual development. E.g., *United States v. Williams*, 559 F.3d 607, 615 (7th Cir. 2009) (validity of jury waiver); *United States v. Rosario*, 234 F.3d 347, 352 (7th Cir. 2000) (use of perjured testimony); *United States v. Hardamon*, 188 F.3d 843, 847 (7th Cir. 1999) (ineffective assistance of counsel). By advising Vinyard to avoid the same path that we encourage criminal defendants to avoid as a matter of prudence, his lawyer was not ineffective. Vinyard has failed to show deficient performance under *Strickland*.

Vinyard's claim fails the prejudice prong of *Strickland* as well. A showing of prejudice generally requires a defendant to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Vinyard has not actually attempted to show prejudice under this standard. Given the flaws in his claims of coercion, he would be hard-pressed to do so. See, e.g., *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (finding a defendant's "after-the-fact explanation wholly insufficient to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea" and rejecting his argument that he had pled guilty based on a promise of a sentence reduction); *Bontkowski v. United States*, 850 F.2d 306, 313–14 (7th Cir. 1988) (defendant's responses made during a plea colloquy were "voluntary and binding" as to whether his plea had been obtained via promises or threats).

Instead, Vinyard argues that his situation fits a different category altogether: cases in which a defendant has, through

an attorney's errors, been denied access to the appeal process altogether. See, e.g., *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). In such cases, courts apply a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims" because the lawyer's deficient performance has rendered the adversary process itself unavailable. *Flores-Ortega*, 528 U.S. at 484. Accordingly, to satisfy *Strickland* in a case like *Flores-Ortega*, a defendant need not show a reasonable probability that he would have *prevailed* on appeal. Instead, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484; accord *Castellanos*, 26 F.3d at 720 (if defendant timely tells attorney he wishes to appeal and attorney fails to do so, defendant "need not make a preliminary showing of 'prejudice' tantamount to presenting the appeal without legal assistance") (footnote omitted).

The presumption of prejudice applied in *Flores-Ortega* and *Castellanos*, where counsel failed to file a notice of appeal as requested, does not extend to the very different facts here. Vinyard did not instruct counsel to appeal only to have counsel refuse or forget; such cases justify the presumption because defendants abandoned by their lawyers have "suffered injury from that very fact—from the loss of advocacy services that could have been used to *establish* a non-frivolous issue for appeal." *Betts v. Litscher*, 241 F.3d 594, 597 (7th Cir. 2001) (emphasis in original), citing *Flores-Ortega*, 528 U.S. at 483, and *Castellanos*, 26 F.3d 717; see also *Flores-Ortega*, 528 U.S. at 486 (concluding it is "unfair to *require* an indigent, perhaps *pro se*, defendant to demonstrate that his

hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal") (emphasis in original). Instead, Vinyard and his attorney discussed the options, and the attorney gave reasonable advice not to pursue a direct appeal. This was not abandonment and did not make it unfair to require a showing of prejudice. See *Castellanos*, 26 F.3d at 719 ("If the defendant wants to take an imprudent appeal, the lawyer properly may try to talk him out of it."); cf. *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013) (appellate counsel can be constitutionally ineffective for failing to present a particular issue on appeal only when it is "obvious" and "clearly stronger" than the claim actually presented, unless he has a strategic justification). The *Flores-Ortega* presumption of prejudice does not apply to this case.

The judgment of the district court is AFFIRMED.